OF THE

## STATE OF MISSOURI

AT THE

APRIL TERM, 1899.

---

*(Continued from Volume 150.)*

---

RYLAND et al. v. BANKS et al.; ZEYSING et al., Plaintiffs in Error; COLEMAN BUFORD et al., Defendants in Error.

Division One, June 14, 1899.

1. **Deed to Trustee for Wife's Use:** SUBSEQUENT CONVEYANCE BY HER. A husband conveyed his land to a trustee, for the sole and separate use of his wife, and in the deed commanded the trustee, at the written request and direction of the wife, to "bargain, sell, mortgage, convey, lease, rent, convey by deed of trust, or otherwise dispose of" the property. *Held*, that she and her husband could there-after by deed of trust convey the land to secure the husband's debt; and the purchaser at a foreclosure sale under such mortgage took the equitable title, the legal title remaining in the trustee—held by him as trustee for the purchaser at the foreclosure sale, and to be conveyed to such purchaser (or if dead, to his heirs) upon request, so as to unite the legal and equitable title in him.

2. ———: ———: POWER OF WIFE. A married woman has power, by deed, without the trustee joining in the conveyance, to dispose of the equitable title to land conveyed or devised to a trustee in fee for the sole and separate use of herself and her heirs, unless specially limited by the instrument creating her separate estate.

3. ———: ———: CONSTRUCTION: DESCRIPTIVE WORDS. The deed of trust in this case, in which both the husband and wife joined, described the land as "all *his* interest in the undivided estate of the late Legrand G. Buford and all of his interest in the dower of his mother, Eusebia Buford, *deceased.*" *Held,* that, as the husband had previously conveyed said land to a trustee for the sole and separate use of his wife, the pronoun "his" in the deed of trust will be read "her" whenever necessary to effectuate the wife's intention to convey her land to secure her husband's debt. *Held,* also, that it can not be inferred from the use of the word "his" that the purpose of the deed was to convey only his inchoate curtesy, but that its use is referable to the loose employment of words by the scrivener who described the husband's mother as "deceased," although she did not die for many years afterward.

*Error to Lafayette Circuit Court.*—HON. CHARLES L. DOBSON, Special Judge.

REVERSED AND REMANDED.

J. D. SHEWALTER and ALEXANDER GRAVES for plaintiffs in error.

(1)    The deed in trust to Graves, trustee, executed by Legrand G. Buford for the benefit of Ora C. Buford, authorized Graves, as trustee, upon the written request of said Ora, to convey the land by deed or mortgage, but it contained no restriction upon the power of the wife, Ora, to do that. It did not purport to confine her power of conveyance to the mode named in the deed.    That mode by the terms and the purport of the deed was merely permissive and not mandatory; cumulative, and not exclusive.    Green v. Sutton, 50 Mo. 190; Schafroth v. Ambs, 46 Mo. 114; Kimm v. Weippert, 46 Mo. 535; Blair v. Railroad, 89 Mo. 392; Turner v. Shaw, 96 Mo. 28.    (2)    It would be nonsensical to hold that Ora and her

husband intended to convey the dower of their mother in these tracts or parcels of land, which dower they did not own; and nonsensical to suppose that they intended by their deed of trust to empower the trustee to make deeds in fee simple to purchasers of said dower interest. Lampert v. Haydel, 96 Mo. 445; Morrison v. Thistle, 67 Mo. 596.

WALLACE & CHILES for defendants in error.

(1) The deed of Legrand G. Buford, Jr., to Alexander Graves in trust for the sole and separate use of Ora C. Buford vested the legal title in the trustee, where it remained until the death of Mrs. Buford, when the coverture being ended, the use was executed and vested the title in Coleman and Florence Buford as the heirs of their mother. Roberts v. Moseley, 51 Mo. 282; Baker v. Nall, 59 Mo. 265; Tremmel v. Klieboldt, 75 Mo. 255. It is true, as cited by counsel, that a *feme sole,* with respect to her separate estate, unless specially restrained by the instrument under which she acts, will not be precluded from adopting any other mode of disposition. But Mrs. Buford was in effect "specially restrained" by her trust deed, in that the legal estate was not in her but in her trustee, and she was powerless to convey it. (2) The deed of trust from L. G. Buford and wife to Zeysing, presents on its face the following *indicia,* showing that it was the husband's interest alone that was attempted to be conveyed. (a) The husband is named first as grantor in the deed. (b) The estate conveyed is "his" interest in the land, and to show that this is deliberate and not an error or oversight, the word "his" occurs twice in this connection. (c) The note secured in the deed of trust is of the same date as the deed, and is signed by L. G. Buford alone. Had there been any intention of creating a debt on the credit of the wife and charging her estate with it her note and not his would have been taken, or at least their joint note. (d) The trust conveyance for Mrs. Buford's

benefit expressly provides that the property should be "wholly free from the debts and liabilities of the husband" and it would be contrary to the provisions of the trust deed to let the property become in this way bound for this debt of her husband. In this way she.would be "specially restrained" from this method of disposing of the property.

MARSHALL, J.—This is a partition proceeding and the questions involved in this court arise between the defendants, Coleman Buford and Florence Eckle, who claim a part of the land partitioned, as the heirs of Legrand G. Buford, Jr., and Ora C. Buford his wife, on the one side, and the defendants, Anna Jones, Irvin Zeysing, Jr., and others, heirs of Irvin Zeysing, Sr., who claim under their ancestor to own the same part of the land, as grantees, by mesne conveyances, of Legrand G. Buford, Jr., and Ora C. Buford, his wife, on the other side.

In 1863, Legrand Buford, Sr., died seized of the land in controversy and also of other land. He left surviving him, his widow, Eusebia, two daughters and two sons, of whom Legrand G. Buford, Jr., was one. In 1886 the land was partitioned in kind, and the dower assigned to the widow of over seven hundred acres, embracing the land in controversy. She remained in possession thereof until her death in 1894. After her death this action was begun to partition the dower land.

In 1875 Legrand G. Buford, Jr., married Ora Chinn, and on January 25th, 1875, Legrand G. Buford, Jr., conveyed all his interest in the dower land to Alexander Graves, in trust for the sole and separate use of his wife Ora, the deed containing the following clause: "And the said party of the second part shall at any and all times hereafter at the request and direction of the said party of the third part expressed in writing, bargain, sell, mortgage, convey, lease, rent, convey by deed of trust for any purpose, or otherwise dispose of said premises or any part thereof, to do which full power is hereby given, and

shall pay over the rents, issues, profits and proceeds thereof to the said party of the third part," etc.   On the 15th of November, 1875, Legrand G. Buford, Jr., and Ora C. Buford, his wife, executed a deed of trust to Irvin Zeysing, Jr., as trustee for Irvin Zeysing, Sr., on property described as:   "All of his interest in the undivided estate of the late Legrand G. Buford, and all of his interest in the dower of his mother Eusebia N. Buford, deceased, as follows" (the land described in this deed is the same land described in the conveyance from Buford and wife to Graves in trust for Mrs. Buford, with the addition of seventeen acres in section 21, as to which, however, no point is made here).   The deed then recites that it was made to secure the payment of a note for $1,438, of the same date, payable at twelve months, and signed by Legrand G. Buford, and further provides that in case of default in the payment of the note secured by the deed the trustee shall sell the land and make, execute and deliver to the purchaser "good and sufficient deed or deeds, which shall convey to said purchaser or puchasers the fee simple title in and to such real estate," etc.   Ora C. Buford died on the 11th of December, 1875, leaving Coleman Buford and Florence Eckle as her sole heirs.   The debt secured by the deed of trust was not paid, and on July 9th, 1877, the trustee foreclosed the deed of trust and Irvin Zeysing, Sr., became the purchaser of the land for $55, and received a deed from the trustee.   Zeysing died and his heirs represent him in this case.

The controversy here is between the heirs of Ora Buford and the heirs of Zeysing.   The controversy, in a nutshell is that the Bufords claim that the legal title to the lands was in Graves as trustee for Ora C. Buford, and that, under the deed to her, she could not convey without the trustee joined in the deed, and that as the trustee did not join in the deed of trust her interest in the land was not divested by that conveyance, but that upon her death the use was executed and the title, divested of the use, immediately vested in her heirs; and further

that the deed of trust only purported to convey the interest of Legrand G. Buford, Jr., in the land, which was only an estate by curtesy, and did not pretend to convey Mrs. Buford's title, and on the other hand the Zeysing heirs claim that the method of conveyance provided in the conveyance to Graves, as trustee, is not exclusive, and that the deed of trust to Zeysing conveyed the interest of Mrs. Buford, although the trustee did not join in it, and that it was intended to be the deed of Mrs. Buford and not of Legrand G. Buford alone.

At the request of the Bufords and of its own motion, the court declared the law as follows:

1st.   If the court believes from the evidence, that the deed of date the 25th day of January, 1875, from Legrand G. Buford to Alexander Graves as trustee for the use and benefit of Ora C. Buford, wife of said Legrand G. Buford, was filed for record and recorded in the recorder's office, for said Lafayette county, on the 30th day of January, 1875, by said Legrand G. Buford, or by his authority or direction, then his dominion over the same was thereby parted with, and such filing and recording thereof constituted a sufficient delivery of such deed to the grantee and beneficiary therein, who are presumed by law to have assented to and accepted the same in the absence of proof of a disclaimer thereof.

2d.   The use, in said trust deed, of date January 25th, 1875, from Legrand G. Buford to Alexander Graves as trustee, conveying such lands to him, for the use of Ora C. Buford, wife of said Legrand G. Buford, as her sole and separate property, free from the control of her said husband and from liability for his debts, was not executed by the statute of uses, in her, during coverture and the lifetime of said Ora C. Buford, so as to enable her to sell, or convey by deed of trust, such undivided fourth interest in the lands thereby conveyed, during such coverture, except by and through her trustee, at her request and direction, expressed in

writing, as prescribed and provided for in such deed to said Graves as trustee.

3d.　The court declares the proper construction of the deed of trust from Legrand G. Buford and wife to Irvin Zeysing, as trustee, of date November 15th, 1875, to secure the payment of the debt of said Legrand G. Buford to said Irvin Zeysing, Sr., to be, that such deed of trust only conveys to said Irvin Zeysing, Jr., all of the interest of said Legrand G. Buford in the undivided estate of the late Legrand G. Buford and all of his, said Legrand G. Buford's interest in the dower of his mother, Eusebia N. Buford, in said lands therein described and referred to, and does not convey nor purport to convey the interest of said Ora C. Buford in such lands.

4th.　The court on its motion declares the law as follows: The deed from Legrand G. Buford to Alexander Graves for the use of Ora C. Buford, was sufficient to divest the said Legrand G. Buford of any and all rights as tenant by the courtesy in the lands therein described; and on the death of said Ora C. Buford, the title to said lands vested absolutely in her heirs in fee simple.

The trial court entered a decree in favor of the Bufords, and after proper steps the Zeysing heirs brought the case to this court.

## I.

The legal title being in Graves and the equitable title in Ora C. Buford, the first question is, did the act of Ora C. Buford in executing the deed of trust carry the title to the land.　The deed to the trustee commanded him, at the request and direction of Mrs. Buford, expressed in writing, to "bargain, sell, mortgage, convey, lease, rent, convey by deed of trust for any purpose or otherwise dispose of" the property, and the Bufords now claim that while it is true that a *feme covert* is absolutely a *feme sole* with respect to her separate

estate, and can convey the same in any manner known to the law, unless "specially restrained" by the instrument under which she holds title, still the deed under which she has title did specially restrain her as to the manner in which she might convey, and hence the deed of trust is ineffective to divest her title because it was not made in the manner to which she was limited.

The proposition underwent close scrutiny in Kimm v. Weippert, 46 Mo. 532. The separate property sought to be charged in that case was held by the wife without the intervention of a trustee, but it was provided that she might encumber, sell and convey it, by "her deed duly executed and joined in by her said husband." WAGNER, J., said: "It is now contended that as the deed conveying the separate estate to Mrs. Weippert provides that she may dispose of it by joining with her husband in a conveyance for that purpose, she is incapable of disposing of it in any other way; and it is further insisted that in no event is the separate estate chargeable for the debt. The deed vests in Mrs. Weippert the full, absolute, and complete title, and gives her the entire ownership, and that will be generally held to carry with it the most ample power of disposition. Some of the earlier cases decided that where a particular mode was pointed out in the deed to the married woman, by which she might convey her separate estate, she was restricted and could convey by that mode only. Chancellor KENT was of the opinion that the power of disposition of the separate estate of the wife by her is not absolute, but only *sub modo*—to the extent of the power given her by the instrument—and if the instrument points out a particular manner of disposition, then no other can be adopted, although there is no express prohibition of any other mode; and there are other authorities of the same purport (citing cases). But the later, better, and prevailing opinion is, that a *feme covert* is absolutely a *feme sole* with respect to her separate estate, when she is not specially restrained, by the instrument

under which she acts, to some particular mode of disposition; and although a particular mode of disposition is pointed out, it will not preclude her from adopting any other mode of disposition, unless there are words restraining her power of disposition to the very mode pointed out. [Citing cases.] When the leading case of Jacques v. M. E. Church (17 Johns. 548) was in the court of errors, where all the law judges concurred in reversing the judgment of the chancellor, SPENCER, C. J., declared that the decision fully established, 'that a *feme covert,* with respect to her separate estate, is to be regarded in a court of equity as a *feme sole,* and may dispose of her property without the consent or concurrence of her trustee, unless she is specially restrained by the instrument under which she acquires her separate estate,' and 'that the established rule in equity is, that when a *feme covert,* having separate property, enters into an agreement, and sufficiently indicates her intention to effect it by her separate estate, a court of equity will apply it to the satisfaction of such an engagement.' And PLATT, J., considered the rule to be, 'that a *feme covert,* having a separate estate, is to be regarded as a *feme sole* as to her right of contracting for and disposing of it. The *jus disponendi* is incident to her separate property, and follows, of course, by implication. She may give it to whom she pleases, or charge it with the debts of her husband, provided no undue influence be exerted over her, and her disposition of it will be sanctioned and enforced by a court of equity—without the assent of her trustee, unless that assent be expressly made necessary by the instrument creating the trust. And the specification of any particular mode of exercising her disposing power does not deprive her of any other mode of using that right, not expressly or by necessary construction negatived in the devise or deed of settlement.' In the instrument we are now considering there is no restriction or limitation. There are affirmative words showing that the wife may convey by joining with her husband, but there is

nothing to indicate that it was intended that she should be restrained to that particular mode."

This doctrine, so lucidly stated, has since been followed, and Judge WAGNER's opinion approved in Missouri (Richeson v. Simmons, 47 Mo. l. c. 26; Green v. Sutton, 50 Mo. l. c. 191; Siemers v. Kleeburg, 56 Mo. 196; Wood v. Kice, 103 Mo. l. c. 338), and in no case to which our attention has been called have the principles announced ever been questioned or departed from, nor indeed do we see how they could be.

Mrs. Buford had a separate estate in the land. Her power of alienation was not specially limited to any particular method and therefore does not fall within the rule against alienation by any other legal method, first declared by Lord THURLOW in Parkes v. White, 11 Ves. 209. Being an equitable estate she had power to charge it by executing her note (Whitesides v. Cannon, 23 Mo. 457), which, while not a conveyance, would be enforced in equity as a charge upon the land (Singluff v. Tindal, 40 S. C. 504; In re Luebbe, 179 Pa. St. 447); she could lease it without her husband joining in the lease (Perkins v. Morse, 78 Me. 17); and she could convey her equitable estate by an instrument in writing which would be void at law because her husband did not join in it but would be valid in equity (Turner v. Shaw, 96 Mo. l. c. 28; Small v. Field, 102 Mo. l. c. 120; Pitts v. Sheriff, 108 Mo. l. c. 115), and although the trustee who had the legal title did not join in the instrument, the equitable title would be passed by her act, and the trustee would hold the legal title for the use of her equitable assign and could be compelled to convey the legal title to her assign, her written instrument being regarded in equity as a direction to the trustee to convey.   [1 Bishop on Law of Married Women, sec. 853; Gregg v. Owens, 37 Minn. 61.]

In Turner v. Shaw, *supra,* the husband conveyed the land directly to his wife "to her sole use and benefit," and this was held sufficient to create in her a separate estate, although if a

stranger had so conveyed, it would not have created a separate estate. The wife afterwards conveyed the land directly to her husband, and it was held a good conveyance in equity, although it was nullity as a deed at law. And it was held that this must have been the effect of her act, "or else it had no effect at all," and it was said by SHERWOOD, J., "But it may be urged that this deed was utterly invalid, because it was executed by the wife alone. However this may be as to mere statutory estates, which require a joinder of husband and wife in order to their valid execution, it will not hold as to separate estates in equity, which the wife may charge, mortgage, or convey, without let or hindrance from her husband. With regard to such property she is, in equity, a *feme sole,* and has the *jus disponendi,* which is the inseparable incident of ownership. By virtue of this, she encumbers, or she absolutely disposes of it, or she binds it by her parol agreements, just as any other owner would. This position is sustained by abundant authority, both here and elsewhere." In Small v. Field, *supra,* the deed was not acknowledged by the married woman, yet the land being her separate estate, the conveyance was held good in equity, the court, speaking through SHERWOOD, J., saying: "This being the case, the fact that Kate Greene signed the deed makes it good to pass the equitable fee without an acknowledgment, just as much so as if she had been *feme sole.*" In Pitts v. Sheriff, *supra,* the husband deeded the land directly to his wife. They separated, were afterwards divorced, she conveyed the land to the defendant by mesne conveyances, and ejectment was brought to recover the land. It was insisted that there was no delivery of the deed as the wife was incompetent to accept a delivery. But it was held, following Turner v. Shaw, *supra,* that the deed, being from the husband to the wife direct, created a separate estate in her, and that the husband would be treated as the trustee of his wife and that when the marriage relation ceased, the trust ceased and

Ryland v. Banks.

the use was executed, and therefore the deed to her and the title claimed through her was held good.

Speaking of this power of a wife to alienate her equitable estates, without a statutory deed, wherein her husband joined her, and without the trustee joining in the conveyance, BISHOP in his excellent treatise on the Law of Married Women, says, sec. 853: "The case which led in the new doctrine" (Taylor v. Meads, 34. L. J. N. S. Ch. 203-207) "was decided by Lord Chancellor WESTBURY in 1865. The question, he said, was 'whether, in a case where real estates are conveyed or devised to trustees in fee, upon trust for the sole and separate use of a married woman and her heirs, she has the same power of disposition by deed or will over the equitable fee as she would have if she were a *feme sole.*' And he answered this question in the affirmative. One can not read his luminous words without thankfulness to that Providence which guides our earthly affairs, for making, now and then, for high judicial place, a man who will not permit his intellect to wear the chains which superstition, clothed in judicial garments, puts upon almost every mean understanding caught within what ought to be the enlightened ranks of the law. He observed: 'There is no difficulty as to the principle. When the courts of equity established the doctrine of the separate use of a married woman, and applied it to both real and personal estate, it became necessary to give the married woman, with respect to such separate property, an independent personal status, and to make her in equity a *feme sole.* It is of the essence of the separate use, that the married woman shall be independent of and free from the control and interference of her husband. With respect to separate property, the *feme covert* is, by the form of trust, released and freed from the fetters and disability of coverture, and invested with the rights and powers of a person who is *sui juris.* To every estate and interest held by a person who is *sui juris,* the common law attaches a right of alienation, and accordingly the right of a *feme covert* to

dispose of her separate estate was recognized and admitted from the beginning until Lord THURLOW devised the clause against anticipation.    But it would be contrary to the whole principle of the doctrine of separate use, to require the consent or concurrence of the husband in the act or instrument by which the wife's separate estate is dealt with or disposed of.    That would be to make her subject to his control and interference. The whole matter lies between a married woman and her trustees; and the true theory of her alienation is, that any instrument, be it deed or writing, when signed by her, operates as a direction to the trustees to convey or hold the estate according to the new trust which is created by such direction. This is sufficient to convey the *feme covert's* equitable interest. When the trust thus created is clothed by the trustees with the legal estate, the alienation is complete both at law and in equity.' "

In the case before us, there is no objection to the deed of trust from a statutory point of view, for the husband joined with the wife in its execution.    The only infirmity relied on is that Graves, the trustee, did not join in its execution.    It was not necessary that he should join.    The deed conveyed the equitable estate of the wife.    The legal estate was still in the trustee, to be held "according to a new trust," or to be conveyed by him to the new owner of the equitable estate according to the direction of the wife expressed in her deed. It is not material in this case which view is taken.    The assign of the wife, could and can yet demand and compel Graves as trustee to convey the legal title to him, and thereby unite in himself the legal title with the equitable title already acquired from the beneficial owner, or it can still be treated as a legal title in Graves for the benefit of the owner of the equitable estate acquired from Mrs. Buford.    The right of a *feme covert* to alienate her separate estate, by deed or other writing, will not be hindered, in equity, unless specially limited by the instrument creating her estate, because the trustee fails or

refuses or has not been asked, to join in the deed or writing, for such a construction of her rights, would limit her *jus disponendi* over her separate estate, as much as requiring her husband to join in the conveyance limits her free disposal of it. In this case the trust was created to protect her estate from outside interference, but the trustee was not given power to protect the estate against its beneficial owner. He was an aid on her staff and not a ruler over her.

It follows therefore that the circuit court erred in the principles which control the case, and that the deed of trust from Legrand G. Buford, Jr., and Ora C. Buford and the foreclosure thereof, conveyed the equitable estate of Ora C. Buford to Irvin Zeysing, Sr., and that the legal title is still in Graves, but is held by him as trustee for Zeysing as a new trust according to the direction of Ora C. Buford, and that Graves is under obligation to convey the legal title to Zeysing upon request, so as to unite the legal and equitable title in him and that he being dead, his heirs have succeeded to his rights in this regard.

## II.

It is wholly immaterial that in the deed of trust the grantors are described as "Legrand G. Buford and Ora C. Buford, his wife," and that the granting clause describes the land as, "all his interest in the undivided estate of the late Legrand G. Buford and all of his interest in the dower of his mother, Eusebia N. Buford, deceased." These are manifest inaccuracies of the scriviner, in keeping with the inartificial way in which he describes the land, e. g., "eighty acres west half northwest, section thirteen," "forty acres northwest northwest, section fourteen," "seventeen acres, southeast corner southeast, section twenty-one," and the like.

Legrand G. Buford at the date of this deed of trust had no interest in any of the lands covered by this deed of trust, except a contingent estate by the curtesy. There was no

Ryland v. Banks.

undivided part of the father's estate except the seven hundred acres, which had been assigned to his mother Eusebia for her dower.    The description in the deed of trust of "all his interest in the undivided estate of the late Legrand G. Buford and of all his interest in the dower of his mother Eusebia N. Buford, deceased," therefore, referred to one and the same thing, his undivided interest in the seven hundred acres.    The looseness of the scrivner is made plainer by his describing "his interest in the dower of his mother Eusebia N. Buford, deceased." Her dower, of course, would cease at her death, but this deed was made in 1875, and she did not die until 1894.    There could be no such thing as a dead person having dower, nor of any one having an interest in the dower of a deceased doweress. This illustrates the loose character of the deed, and the carelessness of the scrivener.    If only the contingent estate by the curtesy of Legrand G. Buford, Jr., was intended to be conveyed, there would be no necessity for Ora to join in the deed, for that estate could not arise until after her death.    But if this was all that was actually conveyed (and most certainly the deed was sufficient to convey this), still the circuit court did not even give this much to the Zeysing heirs, and this estate was in existence at the date of the decree, for Ora C. Buford died in 1875, and Legrand G. Buford, Jr., was alive and a party to this action.    The judgment is erroneous for this reason.    But it is plain that such a construction makes the act of Ora C. Buford in joining in the deed perfectly meaningless.    As we have seen the deed must be construed so as to give some effect to her act, and to ascertain, if possible, and carry out her intention.    She owned the undivided interest of her husband in the seven hundred acres of his father's estate which had been set apart as the dower interest of his mother.    It is too plain to admit of cavil that this was the substantial security which she intended to give, and which she had a right to give, for her husband's note.

To accomplish and effectuate her intention we will read the pronoun "his" as the pronoun "her" wherever necessary in the deed of trust.    [Rines v. Mansfield, 96 Mo. 1. c. 398; Presnell v. Headley, 141 Mo. 194; Thomson v. Thomson, 115 Mo. 67.]    Thus giving a meaning and effect to the deed rather than making it meaningless, so far as Ora is concerned.

It follows that the judgment of the circuit court is erroneous in awarding this interest to the Buford heirs, and in not giving it to the Zeysing heirs, and for this reason that judgment is reversed and the cause remanded to be proceeded with in accordance herewith.    All concur.