## SCANNELL, Appellant, v. AMERICAN SODA FOUN-TAIN COMPANY.

### Division One, March 29, 1901.

1. **Specific Performance:** CONTRACT TO PURCHASE LAND: GOOD TITLE. The parties contracted to exchange land, and agreed "if any defect should be found in the title to either of said properties," the contract might be rescinded. *Held,* that the plaintiff met the requirements of the contract by showing a perfect record title for

seventy years, that he and his ancestors therein had been in un-
broken open possession for fifty-two years, and had paid the taxes
thereon consecutively for thirty-five years, it further appearing that
the land had been in 1769 granted by the French government to
a private person, which concession was subsequently ratified by the
United States. This title was good beyond all reasonable appre-
hension, and that was all this contract required.

2. ———: ———: ———: TITLE BY ADVERSE POSSESSION. A title ac-
quired by adverse possession under the Missouri statute is in every
respect as good for purposes of attack or defense, as a title by deeds
running back to the United States government.

3. ———: ———: EASEMENT. Nonuser of an easement for twenty
years, united with an adverse use of the servient estate inconsis-
tent with the existence of that easement, will extinguish the ease-
ment. So that where the owner of an adjoining lot has not for more
than twenty years used a three-foot right of way across plaintiff's
back lot, and plaintiff has during all that time been in adverse pos-
session of the lot, such easement right will be considered no defect in
plaintiff's title to the lot.

4. ———: ———: DESCRIPTION BY MONUMENT. Where the contract
for exchanging lands described plaintiff's land by the monument of
a three-story stone building, and by metes and bounds which did not
include a nine-inch strip which had been sold to the adjoining owner
to be used for a partition wall, it will be held that the monument
description was the controlling one, and the omission of the nine-
inch strip was no defect in the title.

5. ———: ———: TIME AS ESSENCE: EQUITY. If right and justice
demand that the time limit fixed in a contract for its performance
should be enforced, it will be so deemed, but equity courts will
not stick in the letter of the contract if it prevents them from
doing complete justice. They will in such case hold that time is
not the essence of the contract. And, hence, if plaintiff, since
the institution of his suit for the specific performance of a con-
tract for the exchange of lands, has bought the lot on which were
the easement and the nine-inch strip, referred to in syllabi 3
and 4, and thereby put himself in a position to meet even defendant's
unfounded objection to his title on that account, defendant will
not be heard to urge that the time for the performance of the con-
tract had expired before plaintiff made such purchase. The plain-
tiff being able to make his title good at the time of the trial, he

was, under the circumstances, entitled to a decree for specific performance.

6. ———: ———: LEASE "IN USUAL FORM." The contract called for a lease by plaintiff of the property for two years at a certain price "in the usual form." *Held,* that these words did not in any degree make defective plaintiff's title but the contract would be met if these words themselves were written in the lease, without any variation, enlargement or specifying details.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

REVERSED AND REMANDED *(with directions).*

*Wm. C. Jones, James C. Jones, J. E. McKeighan, Shepard Barclay* and *M. F. Watts* for appellant.

(1) The plaintiff fully performed the contract in all respects. (a) The contract identifies the lot to be transferred by plaintiff as the one on which "is situated the double three-story brick building, marked and known as Nos. 310 and 312 Market street." This is a more specific description of the lot to be conveyed than the general words import, which describe mere space. The house is a fixed and visible object, a monument. It is well-settled law in Missouri that in describing property of this class, calls for visible monuments prevail over mere general descriptions, and over courses and distances. McGill v. Sommers, 15 Mo. 80; West v. Bretelle, 115 Mo. 653; Smith v. Land Company, 117 Mo. 438; Harding v. Wright, 119 Mo. 1. Under the above authorities, plaintiff's conveyance (without the eastern nine inches) satisfied the contract on his part. (b) The contract shows upon its face that the manifest intention of the parties was to include the lot covered by the buildings, not including the nine inches to the east thereof. The intention of the parties controls, even if the language used must

yield to effectuate that intention, which here, however, it need not do.   Pressnell v. Headley, 141 Mo. 186; Ryland v. Banks, 151 Mo. 1; Grady v. Casey, 93 Mo. 595.   (2)   The fact that a penalty was provided by the contract in case of fatal defect in the title does not preclude the specific performance of the contract.   Greffett v. Williams, 113 Mo. 106; Brown v. Norcross, (N. J.) 45 Atl. Rep. 605.   (3)   Specific performance will be decreed, though the title rests solely on adverse possession for the period required by the statute of limitations.   Luckett v. Williamson, 31 Mo. 54; Bicknell v. Comstock, 113 U. S. 152; Fugate v. Pierce, 49 Mo. 441; Key v. Jennings, 66 Mo. 356; Abrams v. Rhoner, 44 Hun, 509; Ottinger v. Strassberger, 33 Hun, 466; affirmed 102 N. Y. 692; N. Y. Steam Co. v. Stern, 46 Hun, 210; Pratt v. Eby, 67 Pa. St. 396.   (4)   It is sufficient if appellant have a good title at any time prior to the decree.   Luckett v. Williamson, 37 Mo. 395; Isaacs v. Skrainka, 95 Mo. 524; Baldwin v. Salter, 8 Paige, 473; Oakey v. Cook, 41 N. J. Eq. 364; Pierce v. Nichols, 1 Paige, 244; Brown v. Hoff, 5 Paige, 235; Jenkins v. Fahey, 73 N. Y. 355; Seymour v. Delancy, 3 Cowen, 445; Dressel v. Jordan, 104 Mass. 416. (5)   No easement existed over the three feet at the south end of the property, and hence there was no defect of title in this particular.   The supposed easement had been completely merged and abandoned and wiped out by lapse of time.   Am. & Eng. Ency. of Law (1 Ed.), p.146; Jones on Easements, sec. 866; Ten Broeck v. Livingston, 1 Johns. Ch. 361; Dunham v. Joyce, 129 Mo. 13; Chandler v. Jamaica, 125 Mass. 549; Corning v. Gould, 16 Wend. 531; Monaghan v. Memphis Fair Co., 11 Pickle (95 Tenn.) 108; Washburn on Real Property (3 Ed.), p. 661; Snell v. Levitt, 110 N. Y. 595; Jones on Easements, secs. 849, 852, 855, 861, 862, 863.   (6)   Time is not of the essence of the contract, on the facts shown in this record.

Vol 161 mo—39

Mastin v. Grimes, 88 Mo. 478; Woodward v. Van Hay, 45 Mo. 300; Pomeroy v. Fullerton, 113 Mo. 440; Melton v. Smith, 65 Mo. 315; Gressell v. Jordan, 104 Mass. 415; Stevenson v. Polk, 71 Iowa 293. (7) If time were of the essence of the contract, appellant offered to perform within the time stipulated. Mastin v. Grimes, 88 Mo. 478; White v. Dobson, 17 Gratt. 262; Oakey v. Cook, 41 N. J. Eq. 362; Stevenson v. Maxwell, 2 N. Y. 408; Vance v. Eaton, 21 Minn. 409. (8) Plaintiff did not abandon the contract, nor rescind. Melton v. Smith, 65 Mo. 315. (9) The supposed uncertainty respecting the lease was wholly immaterial. (a) The terms of the lease were contingent upon the performance of the contract on the part of the defendant. Plaintiff agreed to accept a lease on the terms defined, but defendant did not agree absolutely to give plaintiff the lease. The lease was optional, therefore, with defendant. As defendant repudiated the contract and refused to perform, it can not claim that any uncertainty in the lease was a barrier to specific performance. One who repudiates and breaks a contract is not entitled to recover as upon performance. St. Louis v. McDonald, 10 Mo. 609; Billups v. Daggs, 38 Mo. App. 367. (b) The feature of the contract touching the lease is severable from the main agreement, and any uncertainty in that feature would not prevent the specific performance of the main contract. Gourlay v. Somerset, 19 Ves. 429; Sarter v. Gordon, 2 Hill, Ch. 121; Fry, Spec. Perfm., sec. 217; Pomeroy, Spec. Perf., sec. 161. (10) Finally, had plaintiff's title been actually defective, the defects were of such a small and insignificant nature that the court should have decreed specific performance, with compensation for the trivial defects. 22 Am. & Eng. Ency. of Law (1 Ed.), 60, 956, 957; 2 Kent's Commentaries, p. 475; Hepburn v. Dunlop, 5 Cranch, 262; Hepburn v. Dunlop, 1 Wheaton, 179; King v. Bardeau, Johns. Ch. 38; Calcraft v. Roebuch, 1 Ves.

Jr. 221; Beyer v. March, 2 Sweeny (32 N. Y. Super.), 715;
Chamberlin v. Lee, 10 Sim. 444; Hart v. Handlin, 43 Mo. 171;
Key v. Jennings, 66 Mo. 356; De Wolff v. Pratt, 42 Ill. 210;
Tawner v. Ticknor, 112 Ill. 217; McWhorter v. McMahon, 10
Paige, 386.

*Stewart, Cunningham & Eliot* for respondent.

(1)  Plainly the parties made, and intended to make, time
of the essence of this contract.  Furthermore, in the subse-
quent extensions of time to fixed short future periods  by writ-
ten indorsements signed by both parties, the intention of the
parties to make time essential, is clearly shown.  The court
will not strip the contract of that condition.  Rector v. Price,
1 Mo. 373; Russell v. Geyer, 4 Mo. 384; Glass v. Rowe, 103
Mo. 538; Pomeroy v. Fullerton, 131 Mo. 592; Hollman v. Con-
lon, 143 Mo. 377.  (2)  The contract contemplates and re-
quires title on both sides, perfect of record and otherwise, at
the time fixed for performance, as essential to performance or
obligation to perform; and failure of plaintiff's record title ex-
isting July 17, 1897, was a defeasance of the contract.  De-
fendant was thereby released from all obligation to make the
contemplated trade.  Noyes v. Johnson, 139 Mass. 436;
Vought v. Williams, 46 Hun, 638; Pratt v. Eby, 67 Penn. St.
404; Hartley v. James, 50 N. Y. 42; Schultz v. Rose, 65 How.
Pr. Rep. 75; Chaffin v. Hull, 49 Fed. Rep. 525; Rozier v. Gra-
ham, 146 Mo. 361.  (3)  Plaintiff's title to the Market street
property, described in the contract, was not, on July 17, 1897,
perfect or good, by the records or by possession. At that time
he had no right, title or interest whatever, by record or posses-
sion, to or in a substantial part of the land specified in the con-
tract as the land to be conveyed by him; and half at least of
that land he then possessed was burdened and incumbered by

easements and servitudes not mentioned in the contract. (4) At the time of final decree, plaintiff's title to the land described in the contract to be conveyed by him was not perfect or marketable. It was not a title good beyond all reasonable doubt. It was open to possibility of attack. Rozier v. Graham, 146 Mo. 361; Chaffin v. Hull, 49 Fed. Rep. 525; Luckett v. Williamson, 31 Mo. 57, 58; Hymers v. Branch, 6 Mo. App. 515; Birge v. Bock, 24 Mo. App. 336; s. c., 44 Mo. App. 70; Mastin v. Grimes, 88 Mo. 478; Waterman on Specific Per., sec. 412; Mitchner v. Holmes, 117 Mo. 184; Gerhart v. Peck, 42 Mo. App. 644; Jones v. Williams, 139 Mo. 90; Brown v. Massey, 138 Mo. 532; Herryford v. Turner, 67 Mo. 298; Hill v. Rich Hill & Co., 119 Mo. 27; Filley v. Pope, 115 U. S. 213; King v. Knapp, 59 N. Y. 462; McFerran v. Taylor, 3 Cranch, 270; Wetmore v. Bruce, 118 N. Y. 319; McPherson v. Schade, 149 N. Y. 16; Jeffries v. Jeffries, 117 Mass. 184; Raynor v. Lyon, 46 Hun 227; Butts v. Andrews, 136 Mass. 221; Cunningham v. Blake, 121 Mass. 333; Newbold v. Peabody, etc. Co., 70 Md. 493; Peabody, etc. Co. v. Willson, 82 Md. 186; Mott v. Mott, 68 N. Y. 246. (5) It is immaterial here that defendant did not, before July 17, 1897, notify plaintiff of every defect in plaintiff's title. Defendant was under no obligation or duty to do that. The question is, was or was not plaintiff's title perfect within the meaning of the contract? No estoppel arises against defendant to insist upon defects not pointed out at the time fixed for performance. None was pleaded. Greffet v. Willman, 114 Mo. 118; Railroad v. Curtis, 154 Mo. 20. (6) The provisions of the contract as to a lease of the Market street property by defendant to plaintiff are part and parcel of the agreement, going to the whole consideration, and inseparable from the rest, and yet are not of mutual obligation, and are so vague, indefinite and uncertain as to make it impossible for the court to enforce them. Glass v. Rowe, 103 Mo. 513; Hollmann

v. Conlon, 143 Mo. 378; Davis v. Petty, 147 Mo. 383; Mastin
v. Halley, 61 Mo. 196; Taylor v. Williams, 45 Mo. 80; Louthan
v. Stillwell, 73 Mo. 492.    (7)   This is not a case for specific
performance with compensation for defects.    22 Am. & Eng.
Ency. of Law, p. 943; Filley v. Pope, 115 U. S. 213; King v.
Knapp, 59 N. Y. 462; McFerran v. Taylor, 3 Cranch, 270;
Wetmore v. Bruce, 118 N. Y. 319; Walsh v. Hall, 66 N. C.
233; McPherson v. Shade, 149 N. Y. 16; Drake v. Shields, 7
N. Y. Supp. 209; Jackson v. Ligon, 3 Leigh, 161.    (8)   Even
when contracts for conveyance of land are unconditional and
absolute in terms, specific execution of  them by a court of
equity is a matter not of absolute right, but of sound discretion
in the court; and much less is to be required of defendant to
defeat, than of plaintiff to maintain, such suit. Veth v. Gierth,
92 Mo. 104; 1 Story Eq. Jur. (12 Ed.), secs. 769, 770; Sease
v. Cleveland Foundry Co., 141 Mo. 496; Davis v. Petty, 147
Mo. 385; Brown v. Massey, 138 Mo. 532; Hollmann v. Con-
lon, 143 Mo. 378.

VALLIANT, J.—This is a suit in equity to enforce spe-
cific performance of a contract for the exchange of lands.

By written agreement between the parties in June, 1897,
defendant agreed to convey to plaintiff certain real estate on
Pine street in St. Louis, particularly described in the petition,
for which plaintiff agreed to pay $10,000 and convey to defend-
ant certain real estate on Market street in that city, also particu-
larly described in the petition.   The contract provided "that
if any defect should be found in the title to either of said prop-
erties, so that this contemplated trade can not be made, then
the party whose title proves defective hereby agrees to pay to the
other party the sum of two hundred and fifty dollars as full
compensation for the failure to consummate this contract; and
in the event and upon such failure being made, this contract

shall be absolutely void as if the same had never been made and the two hundred and fifty dollars hereby receipted for shall be returned to said Scannell. If, however, said titles are found to be perfect, said deeds and lease shall be delivered without delay, not later than the first of July next."

There was a stipulation in the agreement for the plaintiff to take a lease from defendant for two years on the Market street property, the terms of which will be noted later when we come to discuss that feature of the agreement.

The parties immediately began investigations of the titles of their respective contemplated purchases, in the course of which the defendant discovered that the plaintiff's record title to the Market street property went back no further than 1829, although the title had emanated from the French government in 1769, and for that reason refused to carry out the agreement for exchange. The subject was discussed between the respective representatives of the parties, and pending the discussion, the time for exchange of deeds was extended first to July 10 and again to July 17. A suggestion was made that the objection might be overcome by obtaining a guarantee of the title by the St. Louis Trust Co., and while that matter was under consideration, the agent of the plaintiff wrote defendant's attorney a note saying: "Mr. Scannell has just called to say that his attorney advises that the title to the Pine street lot is not as it should be, inasmuch as the alleys have never been dedicated and that he ought to have a guaranty against that; in other words, his attorney thinks your defect is more serious than the defect of the Scannell property, and Mr. Scannell thinks he ought not to be required to furnish a guaranty." Several meetings were had between the respective representatives but the defendant's objection to the plaintiff's title was not satisfied and no adjustment of the difficulty was arrived at. On July 12 or 14, the defendant's agent informed plaintiff

that defendant would not carry out the contract.   On July 17, the last day for the fulfillment of the agreement, the plaintiff's agent wrote a note to defendant's agent, saying that plaintiff's deed was ready to deliver and the money ready to be paid, and he desired to close up the matter.   That note was sent either by mail or special message, and the deed and money were in the agent's hands as stated.

After the writing of the note, the agent of the defendant informed the agent of the plaintiff that the defendant would not proceed further in the matter, and all negotiations ceased. Up to that time the only objection defendant had made to the plaintiff's title was that the record did not carry it further back than 1829.   Afterwards before suit was brought, plaintiff made formal tender of his deed and the money required by the contract and demanded a deed to the Pine street property, which defendant refused, and at the same time defendant tendered to plaintiff $250, which plaintiff had paid  as earnest money on the signing of the contract and plaintiff refused it; then this suit was begun.

On the trial, the plaintiff showed title to the Market street property by deeds duly recorded beginning May 5, 1829, from Robert Wash to Robert Rankin, and running through regular succession down to 1881 and 1887, when the title carried by those deeds was conveyed to the plaintiff.   And the evidence showed that the plaintiff and his grantors in those deeds had been in open, unbroken, adverse possession of the property for a period beginning in 1845, and that the plaintiff and his grantors in those deeds had paid all the taxes on the property from and including 1862 down to and including 1897.

The defendants introduced deeds showing, first, a concession from the French government to Jacques Denis dated July 17, 1769; second, Jacques Denis to Francis Denaux dated

June 21, 1771, recorded February 26, 1841; then the testimony of Otto Schmitz, a surveyor, who testified that he had surveyed the property and was familiar with the land covered by the concession to Jacques Denis and that it covered the land in question; he received his information from a certified copy of the confirmations by the United States to various owners in the old city, in the office of Julius Pitzman; then a quitclaim deed from the heirs of Francis Denaux to Alexis Denaux, July 10, 1841; deed from Alexis Denaux to Francis A. Quinette, September 14, 1843; Quinette and wife to Aspasie Des Ilets, August 14, 1844; the will of Aspasie Des Ilet, probated February, 1878, directing her executor to sell her real estate (not described) and pay numerous legacies out of the proceeds, then a deed from plaintiff to Snitzer, June 2, 1887, conveying a strip of nine inches off the east side of the lot in question.

The deeds under which plaintiff acquired the lots contain a reservation of a three-foot strip along the rear end for a private alley for the use of the occupants of the lot east, to go west to a public alley.

In rebuttal, plaintiff showed a deed from Snitzer to him of the lot on the east, including the nine-inch strip he had sold; this deed was dated March, 1898, which was after the suit had begun. The explanation of the sale of the nine inches to Snitzer and its repurchase which plaintiff gives, is that when he came to build the house that now occupies the forty-foot, seven and one-half inch lot in question, he found that the east wall of the old house was a partition wall, one-half of which was the west wall of Snitzer's house, and he was about to have some trouble about it, which was avoided by selling his nine inches that the partition wall covered to Snitzer and building a new east wall for the new house against the old wall. The repurchase was made to enable the plaintiff to obviate the objection

to his title in consequence of the condition of that nine-inch strip.

Plaintiff also showed in rebuttal that the three-foot private alley had been fenced up as early as 1876 and had not been used as such since that date.

The finding and judgment were for the defendant and the plaintiff appeals.

I. The first question we encounter is, was the defendant justified in refusing to perform the contract because the plaintiff's paper title went back no further than 1829, and did not connect with the concession from the French government, subsequently confirmed by the United States? Up to the time defendant positively refused to carry out the agreement, the points in relation to the nine-inch strip and the three-foot easement had not been discovered, at least no mention of them had been made in the discussions, but, so far as could be learned from what was said by defendant's agent, the gap in the record from 1769 to 1829 was the only objection.

It is insisted for the respondent that the contract in question demands not only a reasonably good but an absolutely perfect title. The learned circuit judge who tried the case notes in his opinion that the contract was not written by a lawyer, and on that ground accounts for some indefinite language employed. That fact may also account for the form of expression on this point. The language is, "if any defect should be found in the title," etc. The argument for respondent places the emphasis on the adjective; if *any* defect should be found, the contract should end. In their brief the learned counsel say that the parties "meant just what those words express— any defect whatsoever in the record title notwithstanding that by evidence of possession or other facts not of record, the defect in the record title might be so far supplied as to make the title good and marketable." Of course, if the parties had seen

fit, they might have contracted in those words or to that effect, and if they had, the court would not enforce upon either of them different terms. But a contract calling for an absolutely perfect record title and which would be satisfied with such, does not call for a perfect or even a marketable title, does not in fact call for as good title as this contract calls for. A man may have an absolutely perfect record title, yet it will avail him nothing if his adversary in possession has been there for such a period and under such conditions that the law will not allow him to be disturbed. But that is not the language of this contract. It is "if any defect should be found in the title to either of said properties so that this contemplated trade can not be made, then," etc. That form of expression neither condemns a title for lack of record evidence, nor requires a party to take a record title if it is overshadowed by a title outside the record. And it will be noticed that the word perfect is not used in that sentence, though it occurs in the sentence following: "If, however, the titles are found to be perfect, said deeds and lease are to be delivered without delay, not later than the first of July next." The only office that sentence serves is to fix the date for the performance of the agreement.

A title acquired by adverse possession under our statute is in every respect as good for purposes of attack or defense, as a title by deeds running back to the government. [Bank v. Evans, 51 Mo. 335; Shepley v. Cowan, 52 Mo. 559; Bledsoe v. Simms, 53 Mo. 305; Dalton v. Bank, 54 Mo. 105; Barry v. Otto, 56 Mo. 177; Ridgeway v. Holliday, 59 Mo. 444; Hamilton v. Boggess, 63 Mo. 233; Ekey v. Inge, 87 Mo. 493; Sherwood v. Baker, 105 Mo. 472; Long v. Stock Yards, 107 Mo. 298.]

Titles by deed often have to be helped out by parol evidence, as for example the record title shown by defendant in this case. The concession of the French government to

Jacques Denis had to depend on the oral testimony of a witness who had made a study of old city maps. If plaintiff had shown a direct derivation of that title it would not have come up to the requirement demanded by respondent in his brief, because: "It was not a title good beyond all reasonable doubt. It was open to possibility of attack." The testimony in support of that title was admissible because it was the best that the circumstances of the case could afford, but it was far less satisfactory than the proof of plaintiff's adverse possession for fifty-two years. That period of time would seem of itself to put the plaintiff's title at peace under the first section in our statute of limitations. And it covers also the period of twenty-four years wherein the disabilities which would suspend the statute are allowed to operate by section 4265, Revised Statutes 1899. And if there was even a possibility of claim arising in behalf of the legatees under the will of Aspasie Des Ilets, that would be quieted by the thirty years limitation contained in section 4268, which no disability will affect. [Collins v. Pease, 146 Mo. 135; Fairbanks v. Long, 91 Mo. 628.]

A court of equity would not force upon a defendant a title in which there was any real defect but it will not hesitate to require him to stand up to his contract when the title offered him is good beyond all reasonable apprehension. [Mastin v. Grimes, 88 Mo. 478; Greffet v. Williams, 114 Mo. 106; Mitchner v. Holmes, 117 Mo. 185; Rozier v. Graham, 146 Mo. 352.]

We conclude that the defendant was not justified in refusing to perform his contract when he did and upon the ground he did.

II. But after that, certain other alleged defects in the plaintiff's title were brought forward, one relating to the nine-

inch strip sold to Snitzer, and the other to the three-foot ease-ment.

When this contract was made, this forty-foot, seven and one-half-inch lot was covered by a three-story store building, the east wall of which was against the Snitzer wall. That build-ing was mentioned in the contract and it constituted a conspic-uous monument covering the property. Under those condi-tions if the contract had called for the land containing the build-ing and had then undertaken to describe the lot by metes and bounds and in doing so had fallen nine inches short, and the plaintiff had attempted to force upon the defendant a deed, conveying only what was embraced in the metes and bounds expressed, reserving to himself the strip omitted, is there any doubt but that the court, at the suit of the defendant, would have compelled the plaintiff to convey all that the monument called for? The converse of the proposition is equally true. [McGill v. Somers, 15 Mo. 80; Grandy v. Casey, 93 Mo. 595; Smith v. Land Co., 117 Mo. 438; Harding v. Wright, 119 Mo. 1; Ryland v. Banks, 151 Mo. 1.]

But the plaintiff's record title shows that there is an ease-ment for the benefit of the occupants of the lot east and the lot west, over three feet of the rear of the east twenty feet called for by the contract. The defendant becoming, as he does under this contract, the owner of the west twenty feet is of course in no danger of himself, but his apprehension is that that easement might be insisted on by the man on the Snitzer lot to the east. The evidence on this point went back no farth-er than 1876, but it showed that at that date there was a fence that closed that three-foot space, and it had never been used as an alley by any one, or otherwise than as a back yard by the occupant of the premises. The authorities cited by appel-lant on this point sustain his position that nonuser of an ease-ment for twenty years, united with an adverse use of the ser-

vient estate, inconsistent with the existence of that easement, will extinguish it. [Roanoke v. Ry., 108 Mo. 50, l. c. 62; Chandler v. Jamaica, 125 Mass. 549; 6 Am. & Eng. Ency. Law (1 Ed.), 146; Jones on Ease., sec. 866; Ten Broeck v. Livingston, 1 Johns. Ch. 361.] It would be impossible under the condition shown by the evidence for the owner of the lot east to maintain a right to that easement.

III. Since the institution of this suit, however, the plaintiff, for the purpose, has purchased the Snitzer lot and therefore his deed will not only convey to the defendant the nine inches in question, but will extinguish the easement.

As a general rule, specific performance of such a contract will be enforced if the party seeking it is able, when the decree is rendered, to make his title good. [Luckett v. Williamson, 37 Mo. 388; Isaacs v. Skrainka, 95 Mo. 524.] But that is not a universal rule, and it is claimed by defendant that it should not be applied in this case, because time was of the essence of this contract. In Mastin v. Grimes, supra, which was a case of this kind, it was said by SHERWOOD, J., for the court: "Time is not generally deemed in equity to be of the essence of the contract. And even if by the express terms of the contract a day of payment be fixed and time declared to be of the essence of the contract, still this is no bar to the time of payment being postponed, or to this essential element being altogether waived." And after showing that it is the duty of the court to see that the matter of time is not abused by either party, a quotation is made in that opinion from 2 Parsons on Contracts (5 Ed.), 662, to-wit: "That is a reasonable time which preserves to each party the rights and advantages he possesses, and protects each party from losses that he ought not to suffer." The United States Supreme Court has also likewise held (Cheney v. Libby, 134 U. S. 79). Courts of equity treat this like they treat every subject that demands

their judicial discretion.   If right and justice demand that the
time limit be enforced, it will be so decreed; but equity courts
will not stick in the letter of the contract, in such a case, if it
is to prevent them from doing complete justice.   By the terms
of this contract, when the titles were examined and found per-
fect, the deeds were to be delivered "without delay, and not
later than the first of July next."   That is all there is in the
contract on that subject.   And if we should say that time is of
the essence of the contract we should so say only be-
cause it is so nominated in the bond.   There is nothing in the
circumstances of the case that would have made a few days'
delay injurious to the interests of either party.   In fact, by
agreement they did extend the time twice, and it was during
the period covered by the last extension that the defendant un-
conditionally declared that he would not perform the contract.
The time involved had nothing to do with his determination, at
least he gave no intimation to that effect, but rather excluded
that idea, by giving the reason that he did give.   The plaintiff
was obligated to take a two years' lease of the premises as soon
as the deeds were exchanged.   That shows that the defendant
was not in any strained condition to get into the property. If
defendant had been out of shelter for his business, and needed
immediate possession to save him from loss, or if there had
been any condition indicating an emergency for a consumma-
tion of the transaction, a court of equity might conclude that
time was of the essence of the contract, but there. was nothing
to give such an idea, except the bare letter of the contract, and
if it was written by a real estate agent, we might even con-
jecture that it was inserted at his own suggestion, to hasten
the day of payment of his commissions.

Plaintiff has shown disposition to do everything that could
be done to give the defendant a clear title.   If the defendant
knew of this nine-inch strip and of this three-foot easement,

is was his duty to have notified plaintiff of them before refus-
ing to carry out his agreement, to the end that plaintiff might
have done as he has done, clear up the title.    On this point
the authorities are also with the plaintiff.    [Stevenson v.
Polk, 71 Iowa 292; McWhorter v. McMahon, 10 Paige, 391;
22 Am. and Eng. Ency. of Law, 960.] Under the circumstances
of this case the plaintiff being able at the time of the trial to
make his title good, was entitled to a decree for a specific per-
formance of the contract.

IV.   The contract contains this clause:    "Said Scannell
also further agrees that he will accept a lease in usual form
for said Market street property for a term of two years, begin-
ning on the first day of July, 1897, at a monthly rental of
one hundred and fifty dollars, payable on the last day of each
and every month during said term; said building to be used
for commercial purposes only."    It is contended that   the
words "in usual form" render that part of the agreement so
indefinite that it can not be enforced.    There is nothing indefi-
nite as to the terms and conditions of the lease.    The contract
is as explicit in all the essential parts as it could be.    It is
argued by the learned counsel for respondent that "it is com-
mon knowledge that leases of business property in St. Louis
often, if not usually, contain special provisions about destruc-
tion of the building by fire, keeping roof in repair, payment of
taxes, special assessments, privilege or restrictions concerning
subletting and the like, and that there is no form of lease so
constantly adopted or usual as to make the usual form."    Those
matters mentioned by counsel do not relate to the form in
which the terms of a lease may be expressed, but are them-
selves terms and conditions of the contract.    No other terms
or conditions, privileges or restrictions could be added to the
lease called for in this agreement than those mentioned, and if
a lease is drawn embodying in it those terms and conditions

and nothing else, the mere form in which they are expressed is immaterial. But that part of the contract, in so far as it required plaintiff to accept a lease, has now lapsed by fault of the defendant, and is not in this case.

V. The answer pleads that plaintiff is estopped from claiming under this contract, because he notified defendant that he had found defects in defendant's title, and that he would, therefore, not accept it if a deed was offered. There is no evidence to sustain that plea. It is aimed at the letter from Mr. Boeck to Mr. Eliot, in which Boeck says that plaintiff is advised that the alleys adjacent to the Pine street property have not been dedicated and he thinks plaintiff ought to have a guaranty against that, "in other words, his attorney thinks your defect is more serious than the defect to the Scannel property, and Mr. Scannell thinks he ought not to be required to furnish a guaranty." That letter was written while the proposition to have the St. Louis Trust Company guarantee the title to the Market street property was being considered. It only means that plaintiff thought he ought not to be required to furnish such a guarantee, but it did not amount even to a refusal to do that.

The judgment is reversed and the cause remanded to the circuit court of the city of St. Louis with directions to take an account of the rental value of the Pine street property from July 17, 1897, to date, deducting from the amount of such rents the amount of taxes, if any, the defendant has paid on that property, and of the rental value of the Market street property for the same period, less the taxes, if any, paid by plaintiff thereon, and upon the coming in of said account enter a decree requiring a specific performance of the contract in suit according to the prayer of the plaintiff's petition, except that the lease called for by the contract be not required, and give judgment for the plaintiff against the defendant for the

amount, if any, of the rents less taxes of the Pine street property, over and above the rents less taxes of the Market street property, or, if the balance should be the other way give judgment for the defendant against the plaintiff for the amount of the rents of the Market street property less taxes over and above the amount of rents less taxes of the Pine street property, and render judgment for plaintiff for costs.

All concur; *Marshall, J.,* absent.