CHARLES C. BOWEN v. THE DETROIT CITY RAILWAY CO.

*Street Railways—Diligence in clearing tracks of snow.*

1. A street railway company is bound to exercise such care and diligence in clearing its track of snow as not to interfere needlessly with the safety and convenience of persons lawfully using the street; and if an extraordinary snow-fall takes place it must make extraordinary efforts to dispose of it.

2. In an action for an injury caused by obstructions which in the first instance are lawfully in the street, but which defendant is bound to remove as speedily as possible, it is not necessary to allege that they were left there for an unreasonable time; the offense of leaving them there relates back so that it becomes unlawful from the beginning and the time necessary for their removal is matter of justification and defense.

Error to the Superior Court of Detroit. (Chipman, J.) June 12.—September 23.

CASE. Defendant brings error. Affirmed.

*Brennan & Donnelly* and *Fred A. Baker* for appellant.

*Otto Kirchner* for appellee.

CHAMPLIN, J. The defendant is a corporation operating about eighteen miles of street railway in the city of Detroit. One of its lines is upon Woodward avenue, which consists of a double track. The ordinance under which it is permitted to run and operate its railway requires that it shall keep its track clear from snow. To do this expeditiously it uses Day's improved scraper, which is so constructed as to force

the snow accumulating on its tracks to the side thereof to a distance of about six feet, and attached to the scraper or snow-plow, as it is sometimes called, is a lever extending beyond about four feet, which serves to level down the ridge of snow thrown out by the scraper. This lever is adjustable, and can be raised or lowered. It usually passes about twelve inches above the ground. In ordinary snow-storms this apparatus so disposes of the snow that no inconvenience is occasioned to the public travel.

On the night of February 2d, 1883, a severe snow-storm set in, and continued to fall until the night of the 3d. The snow was very damp, mixed with rain, and packed so firmly when removed by the snow-plow that the leveler failed to distribute it; and it was left in ridges on either side of the tracks, varying in height from two to three feet. On the 3d the weather turned cold, and by three or four o'clock it froze very hard, which had the effect to completely coat these ridges with ice. On Monday, the 5th, the defendant endeavored to level down these ridges by taking a large stick of timber loaded with iron, and hitching spans of horses to each end, and so break them down, but without success. It then took a large plow it had for grading streets, and that broke them up in such large lumps that it was more dangerous than to let them remain as they were, and nothing more was done to remove them. The plaintiff resided at No. 1095 Woodward avenue, and on the evening of the 6th of February, 1883, he was proceeding along Woodward avenue with his son in a sleigh, his team being driven by his coachman toward his home. There was not sufficient room for teams to pass each other between the ridge of snow above described and the curb-stone. On reaching a point opposite the residence of a Mr. Farrington, a grocery delivery wagon was standing in the passage-way between the ridge and the curb. To pass this wagon, the driver crossed over the ridge to the street-car tracks, and continued on in the rear of and following one of defendant's cars, until it stopped for some cause, and plaintiff's team passed around the car in the space which had been cleared of snow, and proceeded on until they were

about to meet another car coming from the opposite direction, when, at the intersection of Warren with Woodward avenue, the driver again attempted to cross the ridge to the drive-way between it and the curb ; and in crossing the ridge at this point the sleigh upset, the persons in it fell out and the horses ran away. The horses and sleigh were injured ; and plaintiff brought this action to recover his damages, which he claims were occasioned by the act of defendant in creating these ridges of snow.

The declaration in the case does not allege that the act of the defendant was unlawful or even wrongful ; nor does it aver any duty owing by defendant to the public or to plaintiff, nor negligence in the discharge of any duty. The defendant insists that removing the snow from its tracks in the manner shown by the testimony was a lawful act, and properly performed, and that the only possible ground upon which the defendant could be made liable would be because it did not remove the ridges within a reasonable time ; and that there can be no recovery in this case under the declaration, because there is no averment that defendant neglected to remove the ridges of snow within a reasonable time. On the other hand, the plaintiff's contention is that the ridges constituted a nuisance in the public street, and that the defendant is liable for all damages sustained by the plaintiff in consequence of placing them there.

It may be considered as settled at the outset that these ridges of snow constituted serious and dangerous obstructions in the street, which interfered with the safety of the public travel and use of the streets, and unless authorized by law were per se nuisances. But if authorized by law they cannot be considered nuisances. Our attention has not been called to any statutory authority which expressly authorizes the defendant to cast the snow from its tracks into the adjacent street. The statute conferring authority upon street railway companies to incorporate and to use streets is embraced in How. Stat. ch. 95. They are authorized, with the consent of the corporate authorities of the city, under such rules, regulations and conditions as such corporate authorities may pre-

scribe, to construct, use, maintain and own a street railway for the transportation of passengers in and upon the lines of the streets. In constructing the railway they are required to conform to the grade of the streets established by the corporate authorities, and to lay the track in such mode and with such kind of rail, and to keep the railway and that part of the street and pavement within and adjacent to the track in such condition and state of repair as prescribed and provided in the consent, grant or agreement of the municipal authorities permitting the construction of the railway. The corporate authorities are authorized to prescribe by ordinance or otherwise such rules and regulations in regard to the street railways as may be required for the grading, paving and repairing the street, and to prevent obstructions thereon. It is made a misdemeanor, punishable by a fine not exceeding five hundred dollars or imprisonment in the county jail not more than one year, for any person to willfully obstruct, break, injure or destroy any railway constructed or operated under that act, or any work, car or building belonging to or in possession of the street railway company. There is nothing in this legislation that grants expressly to defendant any rights in the public streets except for constructing, maintaining, owning and operating a street railway, and by implication such rights as are necessary to carry out the purposes of the grant, and no more of the street is granted than is necessary for that purpose. The franchises conferred are to be enjoyed in common with, and not in exclusion of, the public in the street for the uses and purposes of a highway. It is a matter of common notoriety that all railways must have a clear track in order to be operated at all, and that accumulations of ice and snow must of necessity be removed. And it may fairly be presumed that the Legislature intended that companies organized under the act should keep their track in condition to be operated for the accommodation of the public at all seasons of the year, and that the street adjacent to the track might be used as a place of deposit for the snow that accumulates at certain seasons, in such manner as should not interfere with the rights of the public in the use thereof as

a public highway, or of private individuals as owners of adjoining property.

Although the Legislature by implication granted the right to defendant to deposit the snow from its tracks upon the sides of the street, the company, notwithstanding, were bound to exercise the right conferred in a manner consistent with the rights of the community in the use of such street, and it was also bound to exercise the highest degree of care to prevent injury to the persons and property of those affected by its acts. And while it is implied from the legislative grant to operate the railway that the snow may be deposited or thrown to the sides of the tracks, yet it will be observed that the method to be employed to accomplish the object of keeping the tracks clean is left with the company to determine; and where there are different methods which may be pursued by which the authority given may be exercised, by one of which the snow would be left in such a manner as to become a nuisance, and another not, that method must be adopted which will not create a nuisance. Every person having occasion to use the public streets for the purpose of travel or passage is entitled to feel that he is absolutely safe, while exercising ordinary care, against all accidents arising from obstructions in the street, and no one has the right, without special authority, to materially obstruct it or render its ordinary use dangerous. It is evident that the rights of the public and of the defendant may both be secured in the reasonable use of the streets at the same time, and the railway company be enabled to discharge its duty to the public who rely upon or choose to patronize it, and the traveling public be enabled to use the streets with safety.

It is the duty of the company in removing the snow from its tracks to adopt such a mode as will not create obstructions in the streets to the detriment or danger of the public in the ordinary use thereof. If it can deposit the snow in the streets upon the sides of its tracks in such manner as not to interfere with the use of the street as a public highway, there appears to be no good reason why it may not adopt that mode of disposition, but in doing so it can not be permitted to leave it in ridges or piles which would obstruct the streets, and make

them unsafe or dangerous for vehicles to pass along or cross them. Its rights in this respect are subject and not paramount to the rights of the public to use the streets for the ordinary purpose of passage, and all acts which create obstructions to the use of the street by the public are unlawful. Was the manner adopted by the defendant to dispose of the snow a proper one? The testimony is that the means employed were the most expeditious and best adapted to the purpose of any known appliance, and the one in general use by street railway companies. It also appears from the testimony that ordinarily the snow was not left in ridges, but was leveled off and distributed so that it was not dangerous to the public in using the streets; but in this instance the snow was not leveled off, and remained in ridges, forming dangerous obstructions to travel. The defendant insists that this was not owing to any fault of defendant, but to the extraordinary nature of the storm, rendering it impossible for the machine to distribute the snow as it was forced from the track. If this was an extraordinary storm, the defendant was called upon to put forth extraordinary exertions, not only to clear its tracks but to see that in so doing it did not create an obstruction in the street which would interfere with the public use thereof; and if obstructions were unavoidably made by the mode it employed to clear its tracks of snow, it became its imperative duty to remove such obstructions within a reasonable time, and if it failed to perform this duty it must be held responsible for the consequence to any one in the exercise of ordinary care who has suffered an injury thereby.

The question of reasonable time, in the absence of controversy respecting the facts, or where they are conceded, is one of law for the court to determine, and is defined to be "so much time as is necessary, under the circumstances, to do conveniently what the contract or duty requires, in the particular case, should be done." In this case there was no controversy about the facts. The snow ceased to fall on the 3d, and the accident happened on the evening of the 6th. It is manifest that a reasonable time in which such ridges could and should have been reduced had elapsed before the accident happened. Nothing was done by the defendant until the 5th,

when an effort was made to level the ridges with a stick of timber, which was unsuccessful. Next a plow was used, which did not work satisfactorily, and then the effort was abandoned. Considering the dangerous nature of the obstructions, the defendant was reprehensibly negligent, and showed an utter disregard of the public welfare. It cannot be doubted that other and more ordinary and effective means were at hand, and should have been resorted to. It is unnecessary to mention them. They readily suggest themselves to persons of usual intelligence. The defendant neither removed the obstructions nor excused its want of diligence in removing them, and is justly responsible for the consequences of placing them in the street.

The defense insisted upon, that the defendant is not liable for placing the obstructions in the street, but, if at all, for not removing them in a reasonable time, is rather technical. If it should be conceded that it was lawful for the defendant to create the obstruction in the first instance, yet if allowed to remain an unreasonable length of time, it became unlawful from the beginning, and in an action to recover for the injury caused by the obstruction it is proper for the plaintiff to base his right of action upon the obstruction as unlawful at the time of the injury, and it is not necessary to declare as for leaving it there an unreasonable time. It is matter of justification and defense. It is always a sufficient answer to say that the obstruction was in the highway only a reasonable time and for a lawful purpose. In coming to the conclusion they did, the jury must have found, under the charge of the court, that the plaintiff was in the exercise of ordinary care and did not contribute to the injury complained of, and that such injury was occasioned by the obstructions which defendant caused to be placed in the street and suffered to remain until the time of the accident. The charge of the court was substantially in accord with the views above expressed, and under the facts the plaintiff was entitled to recover, and

The judgment is affirmed.

COOLEY, C. J., and CAMPBELL, J. concurred.

SHERWOOD, J. concurred in the result.