NOVEMBER TERM, 1905.          439

American, etc., Glass Co. *v.* Indiana, etc., Co.—37 Ind. App. 439.

## AMERICAN WINDOW GLASS COMPANY *v.* INDIANA NATURAL GAS & OIL COMPANY ET AL.

[No. 5,488.   Filed March 9, 1906.]

1. LANDLORD AND TENANT.—*Leases.—Contracts.—Gas and Oil.*
—Where the lessor granted to his lessee the right to the gas and oil under his lands "for a term of twelve years and so long thereafter as petroleum, gas or mineral substances can be procured in paying quantities, or the payments hereinafter provided for are made according to the terms and conditions attaching thereto," such lessee has twelve years in which to develop such land, provided the annual payments are made, at the end of which time, if the lands remain undeveloped, the lease terminates by its own terms.   p. 443.

2. SAME.—*Leases.—Gas and Oil.—Accepting Rentals.—Election.*
—Where a lease gives the lessee twelve years in which to develop the gas and oil under the lessor's lands, certain rentals to be paid annually therefor, the acceptance of the fourteenth annual rental does not alone extend such lease for another term of twelve years, but it gives the lessee the right to reasonable notice for the development of such lands before the lessor can terminate such lease, such acceptance being an election not to claim a termination of such lease at the end of the twelfth year.   p. 444.

3. SAME.—*Leases.—Termination.—Reasonable Notice of.—Question for Court or Jury.*—What is a reasonable time for the lessor in a gas-and-oil lease to give his lessee in which to develop the lands is usually a question of fact for the jury, but where the facts are undisputed and the motives of the parties do not enter into consideration, the question is one of law for the court.   p. 445.

4. SAME.—*Leases.—Termination.—Reasonable Time.—What Is.*
—A reasonable time to give the lessee to develop gas and oil on the lessor's lands is such "time that preserves to each party the rights and advantages he possesses, and protects each party from losses that he ought not to suffer."   p. 446.

5. SAME.—*Leases.—Gas and Oil.—Rentals.—Payment.*—The payment of the fourteenth annual rental as provided in the lease of plaintiff's oil-and-gas rights, secures to the lessee, during such year, the right to develop such gas or oil; and the lessor cannot, during such year, terminate such lease.   p. 446.

6. SAME.—*Leases.—Termination.—Leasing to Others.*—Where the lessor in a gas-and-oil lease gave the lessee twelve years within which to develop the lands, but accepted the fourteenth

annual payment of rent, he can not, by leasing such lands to others, terminate lessee's lease during the time covered by such payment, no reasonable notice to develop such lands having been given.  p. 447.

7.  LANDLORD AND TENANT.—*Leases.*—*Termination by Lessor.*— *Delay Thereafter by Lessee.*—Delay in the prosecution of the prescribed work, after the lessor had declared a forfeiture of the lease, can not be considered against such lessee in an action to enforce such forfeiture.  p. 448.

8.  NOTICE.—*Public Records.*—Lessees must take notice of recorded leases and their assignments.  p. 448.

9.  SAME. — *Landlord and Tenant.* — *Prior Leases.* — *Subsequent Lessees.*—Subsequent lessees, with knowledge of existing prior leases, take subject thereto.  p. 448.

From Wells Circuit Court; *Edwin C. Vaughn,* Judge.

Suit by American Window Glass Company against the Indiana Natural Gas & Oil Company and others.  From a decree for defendants, plaintiff appeals.  *Affirmed.*

*Carroll & Dean, Dailey, Simmons & Dailey* and *Cantwell & Simmons,* for appellant.

*W. O. Johnson, W. H. Eichhorn, Miller, Elam & Fesler* and *Blacklidge, Shirley & Wolf,* for appellees.

MYERS, J.—The parties to this action are each claiming to be the owners of the natural gas, oil and other mineral substances underlying certain real estate in Grant county, Indiana, with the exclusive right to enter upon, prospect and remove such mineral substances therefrom, such ownership being based upon certain contracts or leases executed by the landowners, and not otherwise.

The claim of appellee Indiana Natural Gas & Oil Company is founded upon four separate leases, two executed April 5, and two March 12, 1888, by the then landowner, James S. Wilson, to Leonard H. Best, and by virtue of various written assignments of these leases thereafter made, on July 1, 1890, said appellee became vested with all the rights of the original lessee.  These leases and assignments were all duly recorded prior to the execution of the leases

NOVEMBER TERM, 1905.          441

American, etc., Glass Co. *v.* Indiana, etc., Co.—37 Ind. App. 439.

under which appellant claims the ownership of said gas, oil, etc. The leases to appellant, two in number, were executed on April 15 and June 18, 1901, by Frank Wilson, Louie Wilson, his wife, and Frank Wilson, guardian of Wade H. Wilson, grantees of James S. Wilson. All of said leases, so far as they affect the question here for decision, are practically of the same tenor.

The overruling of appellant's motion for a new trial is assigned as error. The reasons assigned for a new trial are: (1) The decision of the court is not sustained by sufficient evidence; (2) the decision of the court is contrary to law. Under this assignment appellant insists that at the time of the execution of the leases to it the leases by James S. Wilson to Best were without force and effect and no longer enforceable against the property owner. If this be true, the judgment must be reversed. Therefore the determination of said appellee's claim to the oil and gas will be decisive of this controversy. The leases under which it claims contain the following stipulations:

"For the purpose and with the exclusive right of drilling, mining and operating for petroleum, gas or any mineral substance on said land, and appropriating said products so obtained to his own use and benefit, except as hereinafter provided, and removing the same from said land for the term of twelve years and so long thereafter as petroleum, gas or mineral substances can be procured in paying quantities or the payments hereinafter provided for are made according to the terms and conditions attaching thereto, * * * and the right to erect * * * machinery, tanks, pipe-lines and other property necessary for the prosecution of said business, and a right of way over, * * * and, should gas alone be found in sufficient quantities and under circumstances making it profitable to pipe the same to other localities, said party of the second part shall pay to said party of the first part $100 per annum for the gas from each well, when so utilized, and sufficient gas to heat and light the dwelling on said premises, said payment to be accepted by

442 APPELLATE COURT OF INDIANA,

American, etc., Glass Co. *v.* Indiana, etc., Co.—37 Ind. App. 439.

said party of the first part as full consideration and in lieu of any other royalty, * * * to commence operations for said drilling and mining purposes within one year from the execution of this lease, or in lieu thereof for delay in commencing such operations and as a consideration for the agreements herein contained, thereafter to pay * * * $36 per annum, payable in advance each year until such operations are commenced and a well completed. A deposit to the credit of the party of the first part in the Marion Bank of Marion, Indiana, shall be considered a payment under the terms of this lease."

The undisputed facts in this case, other than those shown by the leases and as heretofore stated, are that on February 1, 1893, Frank and Louie Wilson and Wade H. Wilson, by conveyance from James S. Wilson, became the owners of the land described in the complaint. All rentals for the delay in developing the lands, until February, March and April, 1901, were duly paid and accepted by the landowners. The rentals for the years 1901 and 1902, ending February, March and April, 1903, were by said appellee deposited in the Marion Bank of Marion, Indiana. The landowners had not personally, nor had any one on their behalf, notified the bank not to receive such rentals. The rental for the year ending in 1901 was paid in February or March, 1900, by a representative of said appellee to said Frank Wilson. The landowners, after said last payment, did not receive any payment from said appellee or from said bank. Said appellee did not, nor did its assignors or any other person on its behalf, ever take possession of the real estate for any purpose prior to May 1, 1902. On said last date said appellee, by its agents and servants, entered upon said real estate, over the objections and orders of such landowners, and constructed derricks, and continued its operations thereon until it had constructed five gas-wells, and was about to commence piping the gas therefrom, when appellant applied for and obtained a temporary restraining order against appellee company, restraining it from piping

or removing any gas or oil from said wells. Appellant has complied with all the terms and conditions of the leases under which it is claiming the right to such gas and oil.

Upon final hearing the restraining order theretofore issued was dissolved and a finding and judgment entered for said appellee. It will be noticed that the leases under which said appellee is claiming gave to it certain expressed rights "for a term of twelve years and so long thereafter as petroleum, gas or mineral substances can be procured in paying quantities, or the payments hereinafter provided for are made according to the terms and conditions attaching thereto." This language is said to be ambiguous and uncertain as to meaning. This is true, but the ambiguity is caused by the use of the word "or" instead of "and," thereby subjoining the stipulation, "the payments hereinafter," etc., as an alternative. This was not the intention of the parties. It would be unreasonable to suppose that in one breath they would be so careful in fixing the time when the leases were to expire and in the next undo it all by stipulating for a nominal annual payment to run indefinitely. The twelve-year clause was incorporated into the leases for a purpose, and it is the duty of the court so to construe the contracts as to give them effect, if it can be done consistently with the rules of law, to the end, that the intention and purpose of the parties may be effectuated. To our minds, the language of the leases last above quoted evidences an intention on the part of the lessor to grant to lessee the exclusive right for the term of twelve years to operate upon said land for petroleum, gas, etc., or the right to delay such operation for such term by paying a certain stipulated annual sum as compensation for such delay; but, in case lessee should in the meantime explore such land and procure the granted product in paying quantities, while this condition existed, the lease would continue, although it may go beyond the limit of the twelve-year period. The evident intention of the landowner was to have

444 APPELLATE COURT OF INDIANA,

American, etc., Glass Co. *v.* Indiana, etc., Co.—37 Ind. App. 439.

his land developed, and the lessee by the twelve-year stipulation in the leases is given an agreed fixed time within which to develop the land and provide a way of utilizing the mineral substances thus obtained. Therefore had the landowners, at the end of the twelve-year term, notified said appellee that they would not receive any further payments, and refused to accept the same, and before payment to the bank given it notice not to receive any payments for their use and benefit on account of these leases, the rights of said appellee under the leases would have terminated. *American Window Glass Co.* v. *Williams* (1903), 30 Ind. App. 685; *Indiana, etc., Oil Co.* v. *Grainger* (1904), 33 Ind. App. 559; *Western Pa. Gas Co.* v. *George* (1894), 161 Pa. St. 47, 28 Atl. 1004; *Cassell* v. *Crothers* (1899), 193 Pa. St. 359, 44 Atl. 446; *Murdock-West Co.* v. *Logan* (1904), 69 Ohio St. 514, 69 N. E. 984; *Brown* v. *Fowler* (1902), 65 Ohio St. 507, 63 N. E. 76; *Northwestern, etc., Gas Co.* v. *City of Tiffin* (1899), 59 Ohio St. 420, 54 N. E. 77; *Bettman* v. *Harness* (1896), 42 W. Va. 433, 26 S. E. 271, 36 L. R. A. 566.

The facts here show that the property owners accepted from said appellee the thirteenth advance annual payment in the same amount and for the same purpose as theretofore paid by said appellee under its leases; that they acknowledged such payment by executing a receipt therefor, which receipt includes the statement, "which payment continues said lease in force for another term." In our opinion this transaction alone would not be sufficient to extend such leases for an additional term of twelve years, but it is sufficient to constitute a waiver by the landowners of the definite time of termination therein fixed. It was therefore a waiver of their right to claim a forfeiture of the leases at the end of the twelve-year period, and effective to require notice to the lessee and a reasonable time thereafter to comply with the terms of the lease before forfeiture.

American, etc., Glass Co. *v.* Indiana, etc., Co.—37 Ind. App. 439.

There is no claim of fraud or bad faith anywhere in this deal, whereby the landowners were overreached or induced to grant such waiver. It must be presumed that they accepted the thirteenth payment with full knowledge of all the facts, as well as its legal effect. · They were at liberty to insist upon a termination of the leases according to their terms or to waive such stipulations. For a valuable consideration they chose the latter. By their own voluntary choosing they must be content. Therefore to give the transaction the force we have ascribed to it does not take away from the landowners the right to declare a forfeiture of such leases; but before they would be entitled to such forfeiture, under the decisions of our Supreme Court applicable to this special class of contracts, they must give said appellee a reasonable time in which to develop the lands after notice of such intention. *Consumers Gas Trust Co.* v. *Littler* (1904), 162 Ind. 320; *Consumers Gas Trust Co.* v. *Worth* (1904), 163 Ind. 141; *Consumers Gas Trust Co.* v. *Ink* (1904), 163 Ind. 174; *LaFayette Gas Co.* v. *Kelsay* (1905), 164 Ind. 563; *Indiana, etc., Oil Co.* v. *Beales* (1906), 166 Ind. 684.

In this class of cases a reasonable time, as a rule, is a question of fact and not one of law; for its determination largely depends upon the circumstances surrounding the

3. particular case and the means and ability of the person by whom the contract is to be performed. See *Consumers Gas Trust Co.* v. *Littler, supra; Island Coal Co.* v. *Combs* (1899), 152 Ind. 379, 387; *Randolph* v. *Frick* (1894), 57 Mo. App. 400. Where the facts are undisputed or admitted, or are clearly established, "reasonable time" has been held to be a question of law; but should the question of reasonable time depend upon any controverted facts, or "where the motives of the party enter into the question, the whole is necessary to be submitted to a jury before any judgment can be formed as to whether the time was or was not reasonable." 7 Words and Phrases, 5977.

446    APPELLATE COURT OF INDIANA,

American, etc., Glass Co. v. Indiana, etc., Co.—37 Ind. App. 439.

In *Scannell* v. *American Soda Fountain Co.* (1901), 161 Mo. 606, 61 S. W. 889, reasonable time is defined to be such "time that preserves to each party the rights and advantages he possesses, and protects each party from losses that he ought not to suffer." To the same effect is the language of the court in *Bowen* v. *Detroit City R. Co.* (1884), 54 Mich. 496, 20 N. W. 559, 52 Am. Rep. 822. The court in *Cameron* v. *Wells* (1858), 30 Vt. 633, quotes from *Graham* v. *Van Diemen's Land Co.* (1855), 11 Exch. 101: "Reasonable time will not begin to run until someone interested in the matter takes some step in respect of it."

The only landowner who testified in this case was Frank Wilson. In this matter he seems to have been acting not only for himself, but also for his wife, and as guardian of Wade H. Wilson. He received from Mr. Branch, representing said appellee, what is termed "land rentals" for the year ending in 1901. Branch died prior to the trial of this cause. From the testimony of Wilson it appears that in February or March, 1900, and at the time he received such rentals, Branch told him they were "going to operate the lease next year, making preparations." The witness was then asked the following question: "I will ask you if you did not state to him, in that connection, that unless they did operate that lease that you would not permit them to hold it any longer? A. Yes, sir." This seems to be all that occurred between the parties at the time the payments were made in 1900 with reference to when operations on these lands were to commence. Whether the parties considered this conversation as referring to the calendar year 1901 or the year for which said appellee was making payment, would make but little difference, as said appellee, without any notice from the landowners that they would not receive any more payments, paid to the bank, as provided in the leases, the fourteenth annual payment when it became due. Such payment, be-

NOVEMBER TERM, 1905.    447

American, etc., Glass Co. *v.* Indiana, etc., Co.—37 Ind. App. 439.

ing accepted by the bank for the use of the Wilsons, and without notice from them not to do so, in a legal sense constituted a payment to the Wilsons, and by reason thereof extended the leases until 1902. *LaFayette Gas Co.* v. *Kelsay, supra; Indiana, etc., Oil Co.* v. *Beals, supra.* But aside from the payments made to the bank nothing further was said or done by either of the parties until about the time the payments for the fourteenth year became due, which was in February and March, 1901. Some time in the latter part of January, 1901, a representative of appellant called upon Wilson, relative to leasing the same lands covered by the leases of appellee Indiana Natural Gas & Oil Company, and was told by Wilson that he would not do anything about leasing the land until he had heard from the Chicago parties, meaning said appellee. But we find no evidence in the record where the matter was taken up with said appellee, nor do we find any evidence showing any further notice to said appellee of intention to terminate the leases, nor do we find any evidence of notice to the bank not to receive such rentals, although Wilson acknowledged having received notice from the bank that it had received the same for his account. The first positive steps taken by the Wilsons to forfeit the leases, as shown by the evidence, was when they leased the land to appellant. As we have said, these latter leases were made in April and June, 1901. Under this state of facts we can not say, as a matter of law, that said appellee was called upon to do anything toward developing the lands prior to the attempted forfeiture in April and June. The testimony of Wilson covers fifty typewritten pages of record, and, from a careful examination of his testimony, we think its weight and the inferences to be drawn therefrom are matters for the trial court, and its conclusion upon the questions of notice to said appellee, and as to reasonable time in which to develop the territory were questions of fact, and the court's finding thereon ought not to be disturbed on appeal.

448 . APPELLATE COURT OF INDIANA,

American, etc., Glass Co. *v.* Indiana, etc., Co.—37 Ind. App. 439.

Any delay by said appellee in the beginning or prosecution of the work, after the execution of the leases to appellant, has no bearing upon the decision of this case. *Consumers Gas Trust Co.* v. *Ink, supra.*

Appellant confidently relies upon the case of *Bettman* v. *Harness, supra,* for a reversal of the judgment in the case at bar. We admit the case is exceedingly persuasive of appellant's views; but under the construction given this class of contracts, and the law, as declared by our Supreme Court on the question of reasonable time to lessees, the case of *Bettman* v. *Harness, supra,* on the question of the extension of leases is not applicable. Therefore, if this appeal was prosecuted by the landowners, the judgment should be affirmed.

The remaining question in the case depends upon whether appellant had knowledge of said appellee's rights at the time it accepted the leases under which it is claiming. Of the recorded leases and their assignments it was bound to take notice. The evidence is undisputed that it knew of the payments and extension of the leases for the additional period of one year. It knew that pending its negotiation for the leases, and at the time it received the same, said appellee had deposited in the Marion Bank money for the use of the landowners, in an amount sufficient, under the stipulations of its leases, to cover a period ending in 1902.

From these facts, and other evidence in the record, the trial court was authorized in finding that appellant had knowledge of said appellee's leases, and was claiming the gas and oil privileges covered by them. Therefore, upon this feature of the case we are inclined to the opinion that appellant occupied no better position than its lessors, for the reason that it can not be regarded as a *bona fide* lessee for value without notice.

Judgment affirmed.