## Louisville & Nashville Railroad Company v. Mulverhill.

(Decided March 7, 1912.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1.  Damages—Personal Injuries.—Where a laborer earning ten dollars a week has his leg broken, and as a result, has a stiff leg, thereby permanently disabling him and preventing him from following his usual occupation, a verdict for three thousand dollars is not excessive.

2.  Streets—Liability for Obstructing.—A third party, whether he be an abutting property owner or not, who places or maintains in the street obstructions that make it unsafe for public travel will be liable for injuries directly resulting therefrom to a traveler who is in the exercise of due care.

3.  Same—Piling Snow in.—Property owners may after heavy falls

of snow remove the same from their buildings and premises and pile it in the carriage or drive way of the street in such a manner as not to unreasonably interfere with the use of the street, and let it remain there until by the exercise of reasonable care it can be removed. But this license to obstruct the street does not authorize the property owner to permit the snow to remain on the street indefinitely or for an unreasonable time.

4. Same—Permitting Pile of Snow to Remain Unreasonable Time.— Where snow from the roof of one of its buildings was piled by a railroad company in the street on January 7th, and permitted to remain until the 13th, it was guilty of actionable negligence to a person who suffered injury on the 13th of January on account of the obstruction.

5. Negligence, Contributory.—Whether the driver of a team of horses who was injured in attempting to drive his team over a pile of snow and ice in the street was guilty of contributory negligence was under the circumstances of this case a question for the jury.

C. H. MOORMAN, STUART CHEVALIER, HELM & HELM and BENJAMIN D. WARFIELD for appellant.

A. T. BURGEVIN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On January 13, 1910, Mulverhill was engaged as a teamster in hauling tobacco stems to the Kentucky Products Company on Ninth street, between Broadway and York, in the city of Louisville. The team he was driving consisted of four horses, and Mulverhill was riding the saddle horse in the team. While driving on the east side of Ninth street from the Products Company's establishment to Broadway the horse Mulverhill was riding stumbled or slipped on some ice in the street, causing him to fall. He fell on Mulverhill's leg, and broke it. To recover damages for the injuries thus sustained, Mulverhill brought this suit against the Louisville & Nashville Railroad Company and the City of Louisville, charging in his petition that about January 7th, the railroad company had removed from the roof of a large building called a freight shed, fronting on the west side of Ninth street, a large quantity of snow, and negligently piled the same in the carriage or roadway of Ninth street, and that it and the city negligently permitted the same to remain there until January 13th. That this mass of snow so piled in the street constituted a dangerous obstruction and made the street unsafe for travel.

To this petition the railroad company and the city filed separate answers, traversing the averments of the petition, and pleading contributory negligence. After the pleadings were made up the case went to trial before a jury and a verdict was returned in favor of Mulverhill against the railroad company for three thousand dollars.

As reasons for a reversal of this judgment, the railroad company insists, first, that although the snow was piled in the street, it left the street under all the circumstances in a reasonably safe condition for travel; second, that Mulverhill was guilty of such contributory negligence as should defeat a recovery; and third, that the damages awarded by the jury are excessive.

There is really not much dispute about the facts. It is shown by the evidence that on January 7th, the railroad company caused snow that had fallen to a depth of about ten inches on its large freight shed to be shoveled from the shed to the carriage way of the street, making a pile about eighteen feet wide, six feet high and probably one hundred feet long. The road or carriage way of the street at the place where the snow was piled was about sixty-seven feet wide; and between the pile of snow and the curb on the east side of Ninth street there was a space of about twelve feet, and on the western side of Ninth street there was a space between the snow and the curb of about thirty-five feet. Between the 7th and 13th of January, the pile of snow had melted until it was not over three feet high, but in the melting and thawing process it had become practically a solid mass of snow and ice, and this snow and ice had spread from the snow pile quite a distance out towards the curb on each side. That on the day of the accident the snow had practically disappeared from the streets in the city, except at this place on Ninth street.

Mulverhill in the performance of his duties passed in and out Ninth street several times each day from January 7th until January 13th. His custom was to come up Broadway and turn in Ninth street on the western side of this snow pile and drive out Ninth street to the Products Company's establishment, which was located on the eastern side of Ninth street, and then drive the empty wagon out Ninth street to Broadway on the eastern side of Ninth street. On the day he received the injuries, as he was on his way out to Broad-

way, he discovered a wagon standing near the curb on the eastern side of Ninth street, and it was necessary in order to pass this wagon with his team that he should pull his horses over closer to this pile of snow and ice than he had been in the habit of doing; and, it was while in the act of passing this wagon in this manner that his horse slipped and fell.

Mulverhill, who was forty-one years old when the accident occurred, testifies that his leg was broke, and that he was "laid up" on this account for about six months. That previous to the injury he had been working regularly at a salary of ten dollars a week. That his leg was permanently injured, and he could not bend the ankle at all, and did not have sufficient strength in that leg to enable him to do the kind of work he had been doing before the injury or to do any work that required him to stand on his feet. That after he recovered sufficiently to go to work, he commenced driving his team again, but had to quit on account of the condition of his leg.

There is no contradiction of his evidence as to the character of injuries received, or that his disability is permanent. Considering his age and the fact that he must earn his living by labor, and that the injury has permanently impaired if not destroyed his ability to work as a teamster, in which occupation he had been engaged for many years, or to do any other kind of manual labor that required him to stand for any length of time or use his legs, we do not think the verdict was excessive.

With this issue out of the way, there remains two questions to be considered—first, Was the railroad company guilty of negligence in piling this snow in the street in the manner that it did, and in permitting it to remain there for the time that it did; and second, was Mulverhill guilty of such contributory negligence as would defeat a recovery.

It is too well settled to need even the citation of authority that it is the duty of a city to exercise ordinary care to keep its streets and public ways in a reasonably safe condition for public travel, and that if it fails in the performance of this duty it will be liable for any injury directly resulting therefrom. It is equally as well settled that if a third party, whether he be an abutting property owner or not, places or maintains in the

street obstructions that make it unsafe for public travel, that he will be liable for any injuries directly resulting therefrom. But, to this principle in the law of streets thus broadly stated, there are of course many exceptions growing out of unusual conditions that will exempt for a reasonable time at least both the city and the individual causing the obstruction of the street from liability to persons injured thereby. Among these exceptions may be noticed one arising out of the necessity that exists for the removal of ice and snow from buildings. We have no doubt that property owners may, after heavy falls of snow, remove the same from their buildings and premises and pile it in the carriage or driveway of the street in such a manner as not to unreasonably interfere with the use of the street, and let it remain there until by the exercise of reasonable care and diligence it could be removed. But this license to obstruct temporarily in an emergency the street with snow and ice taken from adjacent property does not authorize the property owner to permit the snow and ice thus piled to remain on the street indefinitely or for an unreasonable time, when it interferes with or obstructs the use of the street by the public or renders it unsafe or dangerous for travel. It might be conceded that the railroad company would not be liable to a person injured in the daytime, as was Mulverhill, by this obstruction of the street on the day or the day after the snow had been piled there, or until after such a time as by the exercise of reasonable care the obstruction could have been removed. But, in the case before us, this great bank of snow was piled in the street on the 7th of January, and it was permitted to remain there until the 13th. During this time it not only caused an obstruction of the street where it was originally placed, but the alternate melting and freezing of the snow pile caused cakes of ice to form on the street, extending out from the pile towards the curbing on either side in such a way as to increase the danger of travel in that part of the street not covered by the snow pile. The result being that the snow pile not only obstructed that part of the street covered by it, but made the balance of the street unsafe and dangerous for travel. There is no attempt on the part of the railroad company to explain its failure to remove this snow during the week it was permitted to remain where it was placed, and we may therefore fairly assume that by the exercise of rea-

sonable care and diligence the railroad company could have removed from the street some days before the 13th of January the pile of snow it had placed there, and we think that in failing to do·so it was guilty of actionable negligence caused by its unreasonable and unnecessary obstruction of the street on January 13th, if this negligence resulted in injury to a traveler who was in the exercise of due care for his own safety.

The general doctrine we have stated is fully supported by the authorities, among which we may notice Bull v. Spokane, 46 Washington, 237, 13 L. R. A., n. s., 1105, and note thereto. In that case the court said:

"Where ice and snow accumulate upon a sidewalk in the ordinary manner, the city must be allowed due time to remove the same or so deal with the conditions as to render the walks as reasonably safe as could ordinarily be expected under the circumstances. But it is a self-evident fact that where ice and snow are "piled up" on a sidewalk, so as to render it exceedingly slippery, it is a dangerous condition; and where that condition amounts to an obstruction to ordinary travel and is permitted to remain for several weeks without any effort on the part of the city to remedy it or protect pedestrians therefrom, it is sufficient to charge the city with negligence, in the absence of any reasonable justification being shown."

In Dahlin v. Walsh, 192 Mass., 163, 6 L. R. A., n. s., 615, it is said:

"It may be assumed that one might be liable for a special and peculiar injury caused by his own creation of a nuisance upon the highway as by the artificial accumulation of ice and snow upon the sidewalk in front of his premises, and that this liability would extend to the case of one who discharged water upon a sidewalk at a time when the natural result would be to freeze the water and expose travelers upon the sidewalk to danger of injury from falling. * * * If Yudelman did pile up snow upon any part of this sidewalk in such an accumulative mass as essentially to interfere with travel thereon, or by means of the operation of natural causes which he ought to have foreseen to create danger by its melting and freezing, then the plaintiff, if herself in the exercise of due care, could maintain an action against him for a personal injury caused by this conduct on his

part." To the same effect is Field v. Gowdy, 199 Mass.,
568, 19 L. R. A., n. s., 237.

In Brown v. White, 202 Pa., 297, 58 L. R. A., 321, the
court said:

"Obstructions on the footwalks of the streets of a
municipality whether created by the accumulation of ice
or otherwise, except such as are temporarily permitted
for a lawful purpose are a nuisance, and the party re-
sponsible therefor is liable to the individual injured by
his illegal act."

In Bowen v. Detroit St. Ry. Co., 54 Mich., 496, Bowen
was injured in an accident caused by the upsetting of
the vehicle in which he was riding in attempting to cross
a ridge of snow and ice that had been piled up in the
street by the railway company in an effort to free its
tracks of an accumulation of snow. In considering the
case, the court said in part:

"It may be considered as settled at the outset that
these ridges of snow constituted serious and danger-
ous obstructions in the street, which interfered with the
safety of the public travel and use of the streets and
unless authorized by law were per se nuisances.   *   *   *
It is the duty of the company in removing the snow
from its tracks to adopt such a mode as will not create
obstructions in the streets to the detriment or danger
of the public in the ordinary use thereof. If it can de-
posit the snow in the streets upon the sides of its tracks
in such manner as not to interfere with the use of the
street as a public highway, there appears to be no good
reason why it may not adopt that mode of disposition,
but in doing so it can not be permitted to leave it in
ridges or piles which would obstruct the streets and
make them unsafe or dangerous for vehicles to pass
along or across them.   *   *   *   If obstructions were
unavoidably made by the mode it employed to clear its
tracks of snow, it became its imperative duty to remove
such obstructions within a reasonable time, and if it
failed to perform this duty it must be held responsible
for the consequence to any one in the exercise of ordi-
nary care who has suffered an injury thereby.   *   *   *
In this case there was no controversy about the facts.
The snow ceased to fall on the 3d, and the accident hap-
pened on the evening of the 6th. It is manifest that a
reasonable time in which such ridges could and should
have been reduced had elapsed before the accident hap-

pened.  *  *  *  If it should be conceded that it was lawful for the defendant to create the obstruction in the first instance, yet if allowed to remain an unreasonable length of time, it became unlawful from the beginning, and in an action to recover for the injury caused by the obstruction it is proper for the plaintiff to base his right of action upon the obstruction as unlawful at the time of the injury, and it is not necessary to declare as for leaving it there a reasonable time.''

The next question to be considered is the contributory negligence, if any, of Mulverhill. He was a careful experienced driver, and was handling his team in the ordinary and usual way at the time the accident occurred, and the horse he was riding had been ''rough shod'' the day before. He had driven from the Products Company's establishment to Broadway on the east side of Ninth street—as he was driving on the day he was injured—every day since the snow had been piled in the street. And it is altogether reasonable to assume that except for the fact that it became necessary to drive his team near to the snow pile in order to pass the vehicle standing close to the curb, that no accident would have befallen him, as he had driven out the same way on other trips on that day. Mulverhill of course knew of the existence of the snow pile and that it would be necessary in passing the standing vehicle for his horses to walk closer to it than they did on other trips. But his horse had been newly shod, and he believed that he could go safely over the ice and snow, and under the circumstances it was a question for the jury to say whether or not he was guilty of such contributory negligence as would defeat a recovery.

In Mahoney v. Metropolitan R. Co., 104 Mass., 73, the court in a case very similar to this, said:

''The fact that the plaintiff saw the obstruction created by defendants and knew its dangerous character, it is not conclusive proof that he was negligent in attempting to pass it. A person who in the lawful use of a highway meets with an obstacle, may yet proceed if it is consistent with reasonable care so to do. And this is generally a question for the jury, depending upon the nature of the obstruction, and all the circumstances surrounding the parties.'' To the same effect is Holbert v. Philadelphia, 221 Pa. St., 266.

We have examined the cases of Van Pelt v. Town of Clarksburg, 42 W. Va., 218, 24 S. E., 878, and Fryday

v. City of Morehead, 84 Minn., 273, 87 N. W., 780, as well as the other cases cited by council for appellee in support of the proposition that Mulverhill was guilty of such negligence as to defeat a recovery in his behalf. But these cases presented facts and circumstances indicating that the injuried party was guilty of reckless conduct in driving where he did, or at least failed to exercise good care for his own safety, and are not of controlling importance in the solution of the question before us. Indeed, we might well say that upon questions like this it is obvious that each case must be adjudged by the facts it presents. It is easy to declare what the law is, but the difficulty arises when it is attempted to apply the law to the facts; and as the facts in no two cases are exactly alike, it has come to be the settled rule that if there is room for reasonable difference of opinion in respect to the question, it is for the jury to decide.

The judgment is affirmed.