## FIRST NAT. BANK OF LITCHFIELD v. PIPE & CONTRACTORS' SUPPLY CO.

(Circuit Court of Appeals, Second Circuit.    April 20, 1921.)

No. 192.

**1. Contracts ⬅144—Governed by law where made and to be performed.**

A contract of sale, which was made and to be performed in Connecticut, is to be interpreted in the light of the Uniform Sales Act, which has been adopted in that state.

**2. Sales ⬅82(3)—Contract held to be for cash on delivery by loading on cars.**

A contract which expressly required the balance of the purchase price to be paid when the property was loaded on the cars makes the payment of the price concurrent with delivery of the goods, within Gen. St. Conn. 1918, §§ 4707, 4708.

**3. Sales ⬅300—Unpaid seller in possession has lien.**

An unpaid seller of goods, who has not parted with possession, has a lien thereon, which authorizes him to resell, where the buyer has been in default in payment an unreasonable time, under the authority given by Uniform Sales Act (Gen. St. Conn. 1918, § 4726).

**4. Appeal and error ⬅1008(2)—Findings by a court after jury is waived have effect of verdict.**

In a case tried with a jury waived, the findings of fact by the court have the force and effect of a jury's verdict, and are conclusive upon a court reviewing by writ of error, if based on any supporting evidence.

**5. Trial ⬅136(3)—Meaning of plain words is question for court as "question of law."**

The meaning of plain words, in whatever form of writing contained, is for the court, and such matters of interpretation are commonly called "questions of law," though the meaning of language derived from examination of dictionary is a "question of fact," in one sense of that phrase.

**6. Sales ⬅182(1)—"Reasonable time" is question for court, where the facts are undisputed.**

Whether the seller, before rescinding the contract and reselling the goods, gave the buyer a "reasonable time" within which to make payment —that is, such time as is necessary conveniently to do what the contract requires should be done—is a question of law, where the facts are clearly established, or are undisputed or admitted.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reasonable Time.]

**7. Sales ⬅174—Week held reasonable time to wait for payment of goods loaded on cars.**

Where a sales contract required payment of a balance of the price when the goods were loaded on cars, and the seller waited a week after notice to buyer that the goods were loaded, during which time communication between the parties was open, he had waited a reasonable time for buyer to make payment, and is not liable for breach of contract for thereafter selling goods to another and returning the advance payment to the first buyer, less the demurrage charges paid.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the District of Connecticut.

‐ Action by the Pipe & Contractors' Supply Company against the First National Bank of Litchfield for breach of contract of sale. Judgment for plaintiff (268 Fed. 138), and defendant brings error. Reversed, and new trial awarded.

The defendant below (hereinafter called the Bank) in July, 1918, owned and had in the vicinity of Litchfield, Conn., certain secondhand rails, pipe, engines, drills, etc., being machinery and appliances theretofore used in the construction or extension of a certain reservoir. The property was bulky and heavy. On July 25th the Bank agreed in writing with plaintiff below (hereinafter called Pipe Company) to sell this property to Pipe Company. The contract writing recites that Pipe Company, having paid $500 on account, agreed "to pay the further sum of $1,475 for the [property aforesaid] when it is loaded on cars at the Litchfield station. This $1,975 includes the purchase price and moving [the property] to station." .

On August 15th the Bank wrote to Pipe Company that it expected the cars to be ready and the material on the ground ready to load on August 19th. The letter concluded with the following: "Kindly acknowledge receipt of this letter. I understood that you wanted to have some one here when the stuff was ready to load." The word "here" meant Litchfield, Conn. To this letter Pipe Company returned no answer.

On August 22d the Bank wrote again, referring to the previous letter of August 15th, and saying: "Much of the material is already loaded, and we are assured the balance will all be on cars to-morrow afternoon, except crusher and boiler, which are on the ground, and we feel sure it will be loaded on Saturday. Kindly give this your prompt attention, and favor us with your check for $1,475 as agreed." The "Saturday" referred to was August 24th, and on that day all the property was loaded on cars at Litchfield station and ready to move.

On August 23d Pipe Company called up the Bank by telephone and requested that the goods be shipped with a sight draft attached to the bill of lading, and this the Bank refused. Thereupon Pipe Company's officer said over the telephone that he would come up in a few days, which he did not do. On August 31st the Bank wrote to Pipe Company stating that, "not having heard from you [and] in order to protect ourselves," it had sold the property to somebody else, and with the letter returned the partial payment of $500, less demurrage charges on the loaded cars, of $86.

To this the Pipe Company replied on September 5th, professing surprise at the contents of the letter of August 31st, averring that it had always been "ready, able, and willing" to carry out the bargain, and substantially threatening suit. Subsequently this action was brought, wherein a breach of contract is alleged, in that the Bank "failed, neglected, and refused to deliver to [Pipe Company] the goods described in the list attached to" the complaint, viz: the property first above referred to.

Pipe Company is a New York corporation, and its office in New York City; the Bank transacts business at Litchfield, Conn.; jurisdiction depended on these facts. A jury was waived, the court found the foregoing facts, and held in opinion filed that "it was unreasonable of the bank to act so quickly; [Pipe Company] was entitled to a reasonable time within which to make the balance payment, and it did not get it." Thereupon the court assessed as damages the difference between agreed price and market value, entered judgment accordingly, and the Bank took this writ.

William M. Foord, of Torrington, Conn., and Charles Welles Gross, of Hartford, Conn., for plaintiff in error.

Slade, Slade & Slade, of New Haven, Conn. (Benjamin Slade, of New Haven, Conn., of counsel), for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1, 2] The contract at bar was made and was to be performed in Connecticut. It is therefore to be interpreted in the light of the Uniform Sales Act, which has been adopted in that state. The relevant sections of that statute are Nos. 41, 42, and 60 (Gen. Stat. Conn. §§ 4707, 4708 and 4726).

The bargain between Bank and Pipe Company is plain and plainly expressed, viz. that Pipe Company was to pay the Bank $1,475 when the property was loaded on cars at Litchfield. The price was due and payable the moment that loading occurred. In the language of section 42 of the act, "delivery of the goods" (which in this case means completed loading on cars at Litchfield) and "payment of the price are concurrent conditions; that is to say, the seller must be ready and willing to give possession of the goods to the buyer in exchange for the price, and the buyer must be ready and willing to pay the price in exchange for possession of the goods." The intention of parties, as derived from their chosen words, was that title should pass when goods were laden on cars at Litchfield. The transaction was intended to be cash, and the contract was "Do ut des." Frech v. Lewis, 218 Pa. 143, 67 Atl. 45, 11 L. R. A. (N. S.) 948, 120 Am. St. Rep. 864, 11 Ann. Cas. 545.

But Pipe Company, although notified when the cars would be loaded, and pointedly asked for the price, neither sent for the goods nor paid. They did ask for a variation of the contract, which was refused, and at the end of a week from the time when payment was due the Bank sold. This was in assumed compliance with section 60 of the Sales Act, which provides that "where the buyer has been in default in payment of the price an unreasonable time an unpaid seller having a right of lien * * * may resell the goods."

[3, 4] That an unpaid vendor who has not parted with possession has a right of lien is entirely plain; wherefore the only point in this litigation is whether the bank sold before the expiration of a "reasonable time." The case was tried below with a jury waived; consequently the findings of fact by the court have the force and effect of a jury's verdict. This reduces the case to the inquiry whether the finding of the trial judge that the week aforesaid was not a reasonable time is a question of fact or law; for if it be of fact, and based upon any supporting evidence, it is conclusive upon a court reviewing by writ of error.

[5] It is doubtless true that the phrase "question of law" often disguises matters which with equal propriety might have been called questions of fact. Thus the meaning of language as derived from the mere examination of a dictionary is a question of fact in one sense of that phrase. Yet it is perfectly settled that the meaning of plain words, whether contained in a contract, statute, or other writing, is for the court, and that such matters of interpretation or signification are commonly called questions of law has long been a matter of no moment. Cf. Williston, Cont. § 616.

[6] The meaning of the phrase "reasonable time" is not doubtful; it is "such time as is necessary conveniently to do what the contract

requires should be done." Chapman v. Dennison, 77 Me. 211. The subject-matter oftentimes suggests a rule or meaning; thus it was said in Illinois, etc., R. R. v. Mulberry, etc., Co., 238 U. S. 280, 35 Sup. Ct. 762, 59 L. Ed 1306: "What is a reasonable time is to be determined in view of the requirements of interstate commerce."

This was a commercial transaction. The parties were separated by no great distance, and, as the record shows, postal, telephonic, and railway communications were in working order. There is not a disputed fact in the case, and "where the facts are clearly established, or are undisputed, or admitted, the reasonable time is a question of law." Hill v. Hobart, 16 Me. 164; and to the same effect Bowen v. Detroit, etc., Ry., 54 Mich. 501, 20 N. W. 559, 52 Am. Rep. 822. If the contract specifies no time, as in the present case, a reasonable time is implied by law, and what is such reasonable time is a question of law. Morse v. Bellows, 7 N. H. 549, 28 Am. Dec. 372; Sentenne v. Kelly, 59 Hun, 515, 13 N. Y. Supp. 529.

[7] Having regard to the admitted situation of the parties, we have no doubt that the week allowed by the Bank before exercising its right of sale was a reasonable time.

The judgment is therefore reversed, with costs, and a new trial awarded.