## JOSEPH F. PHELION v. DULUTH-SUPERIOR TRANSIT COMPANY.[1]

February 11, 1938.

No. 31,569.

*M. J. McKeon* and *A. G. McKnight,* for appellant.
*G. A. E. Finlayson,* for respondent.

HOLT, JUSTICE.

Plaintiff appeals from an order denying his motion for a new trial after a directed verdict for defendant.

About 15 or 20 minutes before five o'clock in the morning of March 12, 1936, plaintiff fell and fractured his leg as he was crossing the westbound streetcar track of defendant on Fourth street in Duluth, in the middle of the block between Eighth and Ninth avenues east. He came from his home, No. 408 Eighth avenue east, and, because the sidewalks were unshoveled on both sides of Fourth street, walked on the north side of the street easterly. Seeing lights coming toward him upon that side, he concluded to cross over to the south side, as there were no vehicles coming from the west. He had an ordinary flashlight in his hand. It had been snowing and storming during the night. The snowplow of the defendant had passed over both tracks 10 or 15 minutes before plain-

[1]Reported in 277 N. W. 552.

tiff came upon the street. He testified that it appeared smooth and level. He was a janitor at a building east of Ninth avenue. An extraordinary amount of snow fell that winter—65 inches up to March 12; and on that account and because of the unshoveled condition of the sidewalks, he walked in the street and often crossed over from one side of the street to the other near the middle of the block instead of at the regular crossings of Eighth or Ninth avenues. As a rule he came back to his home for breakfast, dinner, and supper and again returned to his work. So he was well acquainted with the condition of the street and the crossings. He testified that where the rails ran there were ruts from two to four inches deep, also that motor vehicles used the street extensively, and, because of the narrowness of the space between the snowbanks at the curb and the outside streetcar rail, these vehicles often straddled the outside rail, thus creating ruts between the rails as well as outside of the outside rails of both tracks. Plaintiff says that he knew of the ruts; that he safely stepped over the outside rail of the westbound track, and intended to step over the inside rail thereof, but planted his heel upon the edge of the rut; that his foot slipped down to the rail, and he tripped and fell. Plaintiff on cross-examination admitted that he had lived at the same place at least four winters before the accident. In that respect he testified as follows:

Q. "Now, those ruts have been along those rails every winter since you have been living up there at 408 North Eighth avenue?

A. "No doubt they have.

Q. "Well, you saw them every winter, didn't you?

A. "Oh, yes.

Q. "They were about the same as on the day of the accident, weren't they?

A. "Yes."

The trial court did not, however, direct a verdict in favor of defendant on the ground that plaintiff was guilty of contributory negligence as a matter of law. The court, in denying plaintiff's motion for a new trial, said:

"While Mr. Phelion was not violating any rule of statute or common law perhaps in attempting to cross the street where he did, and I do not think he is to be held guilty of contributory negligence as a matter of law, the fact of the matter is, as I view it, that his injury was simply not due to any violation of any duty which the street railway company owed him, but that the occurrence, while very regrettable, was simply an accident for which no one is legally responsible."

The assignments of error are: (1) The court erred in directing a verdict in favor of defendant; (2) the verdict as directed is not sustained by the evidence; (3) the verdict as directed is contrary to law. The case may well be disposed of upon the first assignment. If the evidence would not support a verdict for plaintiff, the court did not err in directing a verdict for defendant. Plaintiff predicated recovery upon defendant's violation of an ordinance, passed by the city when the franchise to construct the tracks and operate its streetcars was granted. It is alleged in the complaint that defendant removed the snow from the tracks by piling it up on the boulevards and against the curb in high drifts so that the passage for vehicles between the outside rail and the piled up snow was too narrow. Particularly these allegations are made:

"The defendant negligently and carelessly caused snow to be removed from said street in such a manner as to throw said snow alongside the curb for a distance of about two and one-half (2½) to three (3) feet from the curb out into the street and over and upon the sidewalk situated on the northerly and southerly sides of said Fourth Street and between Eighth and Ninth Avenues East, thereby blocking said sidewalks for pedestrian travel, and compelling pedestrians to walk in the street portion of East Fourth Street between the banks of snow situated along the curbs on the north and south of East Fourth Street, and the defendant negligently and carelessly caused the snow to be removed from the streetcar rails on East Fourth Street between Eighth and Ninth Avenues East in such a manner as to cause ridges of snow and ice to accumulate and form on both sides of the streetcar rails herein described."

Paragraph V charges negligence in the use of the small scrapers which drop down in front of the forward wheels of the streetcar when the motorman desires to remove snow or small obstructions from the rails.

Plaintiff relied upon defendant's violation of the city ordinance as the proximate cause of his injury. It seems perfectly obvious that defendant's plowing up the snow against or over the curb had nothing to do with creating the rut where plaintiff fell. At most it was a mere occasion, perhaps, for motor vehicles driving onto the tracks and straddling the rails, thus making ruts or depressions in addition to the depressions where the rails were. The ordinance which is claimed to have been violated reads:

"It shall be the duty of all street railway companies and other servants, officers and employees, having, owning or operating street railway lines within the limits of the City of Duluth, to remove from off the streets where their lines are located all snow, slush or other similar substance which they shall find it necessary to remove from the part of said streets where they have their tracks, within six (6) hours from the time they shall have removed the said snow from that part of the street occupied by their tracks, provided, that if the quantity of snow removed from the space occupied by said tracks is not sufficient to obstruct or inconvenience public travel upon said highways, the same need not be removed."

Plaintiff also relies upon Ex. Sess. L. 1881, c. 200, relating to streetcars on the streets of the city of Duluth, which provides that the company operating streetcars—

"shall keep the space between the rails in proper repair so as not to interfere with travel over the same, and shall keep the same in proper order as to cleanliness at its own cost and expense. * * * It shall be the duty of said company to repair any and all damages done to the streets, curbs, sidewalks, gutters or other public property, by the construction or repairing of the tracks along the streets as herein provided for; and further to protect and save harmless the said Village of Duluth, against claims or damages arising from

the construction or management of the tracks and roads provided for herein."

The law is well settled in this state that the duty of maintaining its streets and sidewalks reasonably safe for travel rests upon the municipality. 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) § 6818, and cases therein noted. Neither the provisions of the statute referred to nor those in the ordinance quoted undertake to shift that burden from the city of Duluth onto the defendant. It seems plain that the streetcar company by the statute is to keep the space between the rails of its tracks in proper repair and to repair any damages done to the streets in the construction or repair of its tracks and save the city harmless from such damages. It does not include the removal of snow or ice from the sidewalks or streets. And by the ordinance the defendant is charged with the duty of removing from the streets, within six hours, the snow or substance which it finds necessary to remove from the space occupied by the tracks, provided that, if the quantity found necessary to remove from the space occupied by the tracks is not sufficient to obstruct or inconvenience public travel upon the streets, it need not be removed therefrom. In short, if snow falls upon the space occupied by the streetcar company's tracks and rails the company may, by its snowplow, push it against the curb and boulevard and leave it there, provided it does not obstruct or inconvenience public travel. There is no evidence that defendant by its snowplow deposited any snow upon the sidewalks on either side of Fourth street between Eighth and Ninth avenues. The snow thrown against and over the curb had nothing to do with plaintiff's fall or caused him to cross the tracks where he did. That defendant exercised due care and diligence in discharging the duty placed upon it by the ordinance appears from the fact that on this snowy and stormy night its 35-ton, effective snowplow passed over and cleared both tracks on Fourth street, between the avenues mentioned, 10 or 15 minutes before plaintiff met with the accident, so that he himself testified that it appeared to him level and smooth. It left a clear space of nine feet outside the outside rails of its tracks for

vehicular travel. Such a heavy snowplow would naturally fill the ruts, if any, as far as the icy ridges would allow. The complaint, however, is that it should have taken means to remove the ridges of ice which naturally form when vehicles pass over snow and the temperature is unstable—thawing and freezing. Such varying changes in temperature are likely to occur in the first part of March at Duluth. It appears that defendant has diligently endeavored to find some effective means to remove these ice ridges or packed snow ridges thus forming both inside and outside the rails of its tracks. It used for some time a roller, weighing about six and a half tons, equipped with sharp, steel teeth, but found the same not satisfactory. So the teeth were removed and slanting steel cleats were substituted, which work well when the weather is below zero. Such crushing of the ridges with the roller was had a month prior to plaintiff's injury. The evidence of defendant, that the weather conditions were not suitable for the use of the roller prior to March 12, was not disputed. It seems further that the travel of motor vehicles rather than the use of the street by defendant is responsible for those hard or icy ruts and ridges, something which neither the statute nor the ordinance attempts to charge defendant with the duty of removing. In the absence of statute or ordinance, we think the responsibility for ruts and ridges which caused the plaintiff's accident was upon the city. But even had the city been defendant and had used the same diligence which the evidence showed defendant did, to keep this street in reasonably safe condition, we think there could have been no recovery. Plaintiff as a pedestrian had the right to use any part of the street; but, at the same time, he cannot expect of the city that care in protecting against ruts and ridges due to snow anywhere along the street as at the ordinary crosswalks.

It is not deemed necessary to discuss the cases cited where a city or a streetcar company operating on the city streets has been held liable for injuries resulting from defects or holes in the street. Plaintiff cites decisions dealing with snow and ice by streetcar companies. Bowen v. Detroit City Ry. Co. 54 Mich. 496, 20 N. W. 559, 52 Am. R. 822; Wallace v. Detroit City Ry. Co. 58 Mich. 231, 24

N. W. 870; Prime v. Twenty-third St. R. Co. 1 Abbott New Cases (N. Y.) 63; Dixon v. Brooklyn City & Newtown R. Co. 100 N. Y. 170, 3 N. E. 65; McDonald v. Toledo Cons. St. Ry. Co. (6 Cir.) 74 F. 104. The Bowen case was one where the streetcar company had moved an exceedingly heavy fall of wet snow from its tracks, leaving no room for travel outside its track. A sudden hard freeze occurred before it could be moved. By heavy timbers propelled against the obstructions, the frozen ridges were broken up into large chunks, which rendered the street almost impassable. Two vehicles collided because obstructed by these chunks and plaintiff was injured. It was held the company had created a nuisance in the street and was liable. The Wallace case was held ruled by the Bowen case, and that the exception to the court's charge was not meritorious. The Prime case was an action enjoining the streetcar company from piling up high drifts in front of plaintiff's home. In the Dixon case the streetcar company had barely cleared its tracks from the snow, leaving a three-foot slanting bank of hard snow, upon which plaintiff slipped in attempting to board the front entrance of a slowly moving car. In the fall he slid under the wheels of the car. There could be no question about the obstruction thus created by the company being the proximate cause of the injury sustained. In the McDonald case the same condition as in the Dixon case had been created, and it caused the tipping of the carriage which injured plaintiff, and a judgment entered for defendant on a directed verdict was reversed. But that is not a parallel case to this. Many cases are found in 54 A. L. R. 1303 (removal of snow—the case annotated, Brobston v. Darby, 290 Pa. 331, 138 A. 849, has no bearing on the vital issue here). We conclude that the learned trial court rightly directed a verdict for defendant.

Order affirmed.

MR. JUSTICE STONE, absent on account of illness, took no part in the consideration or decision of this case.